Ellen Roberts and Loring Schatz, d/b/a Longy's El Rancho Grande, Plaintiffs-Appellants, v. Illinois Liquor Control Commission and Paul Ronske, Local Liquor Control Commissioner of DuPage County, Defendants-Appellees.

Gen. No. 49,564.

First District, Third Division.

April 15, 1965.

Halfpenny, Hahn and Ryan, of Chicago (James F. Flanagan and Mary M. Shaw, of counsel), for appellants.

William G. Clark, Attorney General, of Springfield (Richard A. Michael, John J. O'Toole and Frank

Barth, Assistant Attorneys General, of counsel), for Illinois Liquor Control Commission, appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal by retail liquor licensees from an order of the circuit court of Cook County affirming an order of the Illinois Liquor Control Commission, which in turn affirmed an order of the DuPage County Local Liquor Control Commissioner. The order of the Du Page County Local Liquor Control Commissioner provided for the suspension of sale of alcoholic beverages by the plaintiffs for a period of five days, on the grounds that they had sold liquor to a minor, and the plaintiffs were placed on probation for a six months period. The order of the Illinois Liquor Control Commission sustained the five-day suspension imposed by the local liquor control commissioner and set aside the provision for the six months period of probation.

The plaintiffs contend: (1) the sale was illegally induced by entrapment; (2) the local liquor control commissioner and the Illinois Liquor Control Commission acted outside their powers because the hearings conducted by them were not fair, reasonable and impartial; (3) the proceedings violated the rights of the licensees to due process of law under the United States and Illinois Constitutions, and (4) the Illinois Liquor Control Commission failed to make proper findings of fact and therefore its order is invalid.

In their briefs the parties refer to the local liquor control *commission* although Paul Ronske is made a defendant in this case as local liquor control *commissioner* of DuPage County. By section 2 of Article 4 of an act relating to alcoholic liquors (Ill Rev Stats 1961, c 43, par 111) the president or chairman of the County Board shall be the local liquor control commissioner

173

and his authority extends to only that area in the county which lies outside of the corporate limits of the cities, villages and incorporated towns therein. When reference is herein made to the local liquor control commissioner we are referring to Paul Ronske.

The order of the local liquor control commissioner of DuPage County was based upon the sale of a quart bottle of beer to a minor, one John Moore, on the night of July 20, 1962.

Ralph Fortman, a detective sergeant for the city of Wheaton, testified that on July 8, 1962 the police department had received complaints from neighbors to the effect that there was a lot of drinking going on and excessive noise at a certain address within the city limits of Wheaton. Subsequently police officers went to the address given and found hundreds of empty beer cans laying all over the lawn. They went into the house and found between one and two cases of liquor. There were also three or four boys present who were quite intoxicated, all of whom were juveniles. One fifteen year old boy was carried out into the car. The fifteen year old boy was arrested, together with a couple of other boys and the sergeant proceeded to interrogate them the next day and learned that there had been approximately 90 "kids" who had been at the party at one time or another. The sergeant talked to 20 or 30 boys and girls and they all said they did not know where the liquor came from but that it was just brought in by the bundles, and they had never seen a party like it. They said that they had also seen boys with beers in their hands but they didn't know where it came from.

One of the boys who was brought to the station at a later date was John Moore. He said that he did not bring in any beer, that it was quite a drinking party, that he didn't stay there very long and that he never saw anything like it. The sergeant told him

that he was trying to find out where these purchases were being made. Moore stated that he believed he could make purchases at several of the taverns and he heard that different taverns sold liquor (presumably to minors). The sergeant then asked Moore if he would be willing to make purchases, and said that he wanted to talk to the State's Attorney and others and see what the circumstances would be.

The sergeant then consulted with Robert K. Matthews, chief investigator of the State's Attorney's office, William Bauer, the State's Attorney, and William Hopf, the First Assistant State's Attorney and with Sheriff Lawrence Springborne. He also talked to Mr. Ronske, whom he described as the head of the Supervisors of DuPage County; also to a Mr. Karr and Mr. George Pratt, whom he described as supervisors, and Basil White, Chief of Police of the city of Wheaton.

On the evening of July 20th at about 7 p. m. there were present at the police department John Moore, Gary Beck and Barret Johnson, all of whom were minors, Chief Investigator Matthews, Detective Gihle of the Sheriff's Department, Mr. Ronske, Mr. Karr and Mr. Pratt. The State's Attorney instructed the boys to attempt to make purchases at certain taverns and that there would be no arrest.

Fortman further testified that the plan was worked out with the Sheriff's office, the Chief of Police of the city of Wheaton, the local liquor commissioner and the State's Attorney's office of DuPage County, for these three boys to visit various retail licensees on a certain night in an endeavor to purchase liquor. The money was furnished by State's Attorney's Investigator Robert Matthews.

John Moore testified that he was born on November 27, 1943; that he was a student at the University of Illinois, and that on July 20, 1962 he was in the

vicinity of Longy's Tavern at about 8:20 p. m.; that the tavern is located on Roosevelt Road, south side of the street, east of Glen Ellyn in Lombard. (The Lombard address must be a postoffice address, because if the tavern was within the municipal boundaries the county liquor control commissioner would have no jurisdiction. However, no point is made of this.)

He further testified that he was in his car with Sergeant Fortman, Barret Johnson and Gary Beck; that in a separate car trailing them were Detective Gihle and Investigator Matthews. When they reached Longy's Tavern he got out of the car, went in the front entrance, walked into the bar, waited for a bartender to come over and asked him for a quart of Budweiser. The bartender went into the back, got a quart of Budweiser beer, brought it out and put it in a paper bag. Moore paid him and brought it out to the car and gave it to Sergeant Fortman, who marked it for identification. He remembered no other conversation with the bartender and no request was made by the person who served him as to his identity and age. That on the evening of July 20th, after leaving the police station, they visited between 31 and 34 establishments and made purchases in 22 establishments.

One of the plaintiffs, Loring Schatz, testified that he is the licensee of the premises known as Longy's Tavern; that he was on the premises on the evening of July 20th at approximately 8:15; that the dining room seats about 60 and the bar would seat approximately 18 to 20. As for John Moore, he testified that he never saw the man before in his life until he went into the courthouse in Wheaton; that his practice with regard to selling to persons who may appear to be to be under age is to have them put up at least two means of identification, their ID card and a driver's license. He further testified that he might have been

away from the bar at about the time that Moore testified he entered, but that he would be seated so that he could observe both the dining room and the bar. That a Mr. Frederick was behind the bar and would be the person who would wait on a customer who bought a package of liquor.

Mr. Frederick, called as a witness, testified that he is employed as a bartender at Longy's Tavern, and that he did not recall serving Mr. Moore on the night of July 20, 1962.

The testimony of other witnesses was more or less corroborative of the facts herein set forth.

In support of plaintiffs' first contention, that the sale, if made, was illegally induced by entrapment, they cite the case of People v. Steig, 258 Ill App 447, which involved the case of a governmental informer who was an intimate friend of the defendant and who urged and pleaded with the defendant to help him out by selling him alcohol. The facts in that case are not similar to the facts in the instant case. In the Steig case the court cited the case of People v. Schell, 240 Ill App 254, wherein the court on page 259 used the following significant language: "There is a wide distinction between inducing a person to sell liquor who is then engaged in that business and in inducing one to enter the business for the purpose of prosecuting him." The plaintiffs in this case were in the retail liquor business.

In the case of City of Evanston v. Myers, 172 Ill 266, 50 NE 204, the ordinance of the city of Evanston at that time forbade the sale of beer, among other intoxicating liquors. The defendant on the day in question was driving a beer wagon along an alley in Evanston when he was hailed by one Denvir, the prosecuting witness. Denvir hailed the defendant and asked, "How is it for a case of beer?" to which the defendant replied, "It is all right." The money was paid and the

beer handed out. The money thus used was furnished by a society in Evanston known as the "Four-Mile League" and the city of Evanston, and was supplied by the chief of police of Evanston to Denvir to enable him to buy beer of those who were willing to sell, for the purpose of detecting violators of the ordinance. The court on page 268 said:

> "The offense of selling this beer having been voluntarily committed, is it reasonable to say that the willingness of Denvir to purchase, for whatever purpose or object, constitutes a sufficient inducement to appellee to make the sale, so as to excuse the act? We think not. The offense consisted, not in the buying, but in the selling of the beer."

Again, on page 269 the court said:

> "In the case at bar it may be truly said it does not appear that it was the purpose of the city of Evanston to induce or solicit the unlawful selling of beer within its limits, but to ascertain whether the ordinance was being violated in that regard. . . . The position of appellee is not that he is innocent of the offense charged, but that his guilt was proven on the trial by evidence obtained in an objectionable manner by the city. This is a matter of which he has no right to complain."

The plaintiffs also cite the case of In Re Horwitz, 360 Ill 313, 196 NE 208, which was a disbarment proceeding. The facts in that case are far from similar to the facts in the case before us. There an insurance company, through its investigator and private detective, plotted and schemed a spurious personal injury claim in an effort to check on one of its own employees. When Horwitz was finally employed as the attorney for the alleged injured man, the company

178

then turned its attention to Horwitz and an elaborate scheme was set up which would deceive any lawyer who was not suspicious by nature. From the record in that case it was never shown that Horwitz knew that the accident was spurious and the injuries feigned.

■ It is well settled that where nothing more than a simple request to make an unlawful sale of an intoxicant appears, the fact that the solicitation was by a decoy, does not make the defense of entrapment available (Fetters v. United States, 260 F 142 (1919, CA 9th Cal), cert den 251 US 554; City of Evanston v. Myers, 172 Ill 266, 50 NE 204 (1898); State v. Calanti, 142 Me 59, 46 A2d 412 (1946); People v. England, 221 Mich 607, 192 NW 612 (1923); State v. Drewing, 245 SW2d 874 (1952, Mo); State v. Plucker, 71 SD 78, 21 NW2d 280 (1946)), and it is immaterial that the governmental agency supplied the money for the purchase, Kivette v. United States, 230 F2d 749 (1956, CA 5th, Ga); State v. Emerson, 233 La 885, 98 So2d 225 (1957); People v. Norcross, 71 Cal App 2, 234 P 438 (1925); State v. Driscoll, 119 Kan 473, 239 P 1105 (1925); Terrell v. State, 89 Ind App 125, 166 NE 8 (1929).

■ The plaintiffs also cite the case of Sorrells v. United States, 287 US 435 (1932). In that case a government agent pleaded with and urged the defendant to sell him whiskey and there was no evidence to indicate that the defendant might be predisposed to make the illegal sale. In the instant case there was a mere offer to purchase from one who was in the business of selling liquor. We conclude that there was no entrapment.

The plaintiffs second point is that the local liquor control commissioner and the Illinois Liquor Control Commission acted outside their powers because the hearings conducted by them were not fair, reasonable and impartial. The plaintiffs contend that because the

179

local liquor control commissioner Ronske participated to some extent with the police, the Sheriff's office and the State's Attorney's office, and at least consented to the use of minors who were to make an effort to purchase alcoholic liquors, that the hearings conducted by the local liquor control commissioner and the Illinois Liquor Control Commission were not fair, reasonable and impartial. The charges made against the local commissioner we have already held not to constitute entrapment, and while on its face it may appear unfair for the man, who has the power to suspend the license, to aid in securing the evidence upon which to base the suspension, nevertheless by Section 3 of Article 4 of the Liquor Control Act (Ill Rev Stats 1961, c 43, par 112(2)), the local commissioner is given the power to enter or to authorize any law enforcing officer to enter at any time upon any licensed premises to determine whether any of the provisions of the act or any rules or regulations adopted by him or by the State Commission have been or are being violated, and at such time to examine the premises of said licensee. Under Section 4 of Article 4 the local liquor control commissioner is given authority to authorize his agent, or to act on his own behalf, for the purpose of obtaining any of the information he desires. Further, since the order of the local liquor control commissioner was appealed to the State Liquor Control Commission and a trial de novo held, and none of the members of the State Liquor Control Commission are charged with any kind of participation, we do not understand how it can be said that the Illinois Liquor Control Commission hearing was not conducted fairly, reasonably or impartially. The facts in the case disclose without any dispute that intoxicating liquor was sold to a minor. One of the plaintiffs testified that he had never seen John Moore, the boy who made the purchase, before

in his life, and Frederick, the bartender, likewise, did not recall ever having seen him. Neither deny that the sale was made, and on the basis of the testimony heard by the Illinois Liquor Control Commission, it had no alternative but to find that the local liquor commissioner was correct in his finding that a sale had been made to a minor. The same charges made against the local liquor control commissioner were not and could not be made against the State Liquor Control Commission, and since a trial de novo was held by that body, which could not have been charged with prejudice or participation as was the local commissioner, this second point raised by the plaintiffs is not well taken.

■ The plaintiffs charge as their third point that the proceedings violated the rights of the licensees to due process of law under the United States and Illinois Constitutions. In Great Alantic & Pacific Tea Co. v. Mayor and Com'rs of the City of Danville, 367 Ill 310, 11 NE2d 388, on page 317 the court said:

> "The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise."

Hornstein v. Illinois Liquor Control Commission, 412 Ill 365, 106 NE2d 354, was decided at a time when there was no express requirement in the Liquor Control Act that a local commissioner hold a hearing as a condition precedent to an order revoking a local liquor license. The plaintiff in that case contended that, unless notice and a hearing were required to precede the revocation of a local license, the statute violated the due process clauses of the Federal and State

Constitutions. The court quoted the above language from the Great Atlantic & Pacific Tea Co. case and on page 370 of the opinion said:

> "Revocation of a liquor license without a hearing is not a novel procedure, 'In the absence of a statute providing otherwise, a liquor license may be revoked by licensing officers acting under statutory authority with or without notice to the licensee.' (30 Am Jur, Intoxicating Liquors, sec 147.) Revocation at the discretion of the mayor, with the license terminating 'absolutely upon the notice of said revocation being left at the bar,' was standard under our earlier liquor laws, and was sustained against constitutional attack . . . We hold, therefore, that the Liquor Control Act, in providing for summary revocation of a liquor license by the local officer, with a right to an appeal to the State Commission and a trial de novo of the propriety of the action of the local officer, violates no constitutional rights."

Although the Liquor Control Act now provides for notice and hearing before the local commissioner, the statute provides the same de novo review before the State Commission which existed at the time of the Hornstein decision. If a de novo review protected a plaintiff's constitutional rights after a summary revocation of his liquor license under the prior procedure, such review would similarly protect a plaintiff's constitutional rights after a tainted hearing before a local commissioner.

The plaintiffs' contention under this point is that the local commissioner acted as prosecutor, policeman and judge, and that because of his conduct they were deprived of due process of law. However, since the plaintiffs were afforded a trial de novo by the State Liquor Control Commission, the members of

182

which commission were not tarred with the same charges made against the local commissioner, no constitutional questions are presented by this appeal.

For their fourth point the plaintiffs assert that the Illinois Liquor Control Commission failed to make proper findings of fact and that its order is therefore invalid.

The only finding of the local liquor control commissioner was that the plaintiffs had sold intoxicating liquor to a minor.

Section 12, Article 6 of the Liquor Control Act (Ill Rev Stats 1961, c 43, par 131) provides that no licensee, nor agent or employee of such licensee shall sell, give or deliver alcoholic liquor to any person under the age of 21 years. The order of the local liquor control commissioner, which was served upon the plaintiffs herein, and which was transmitted to the Illinois Liquor Control Commission with the appeal taken by the plaintiffs, contains specific findings that intoxicating liquor had been sold to a minor of the age of 18 years by the plaintiffs on a date specified. The name of the minor was also set forth in the findings of the local liquor control commissioner. The order of the State Liquor Control Commission recited that it had heard and considered the evidence, both oral and documentary, at the hearing held before it. That the evidence adduced at the hearing before the Commission justified the order as entered by the liquor control commissioner of Du Page County in all respects except that part placing appellants on six months probation. The order further sustained and affirmed the order of the local liquor control commissioner in all respects except as to that part providing for six months probation, which part was reversed and set aside.

In view of the language of the State commission's order that the order of the local liquor control com-

183

missioner be "SUSTAINED and AFFIRMED in all respects except as to the part providing for six months probation . . . ," and because the findings of the local liquor control commissioner were a part of the order which was so sustained and affirmed, it can be said that the findings of fact regarding the sale to a minor were incorporated by reference and became a part of the order of the State commission.

The plaintiffs cite the case of International Harvester Co. v. Zoning Board, 43 Ill App2d 440, 193 NE2d 856. There the proceeding under the Administrative Review Act was from the original administrative body and there were no findings of fact in the record as presented to the trial court. The appellate court on page 450 said:

> "The zoning board, however, made no finding in reference to these standards—in fact its decision did not mention them at all and the comments of the chairman, during the course of the hearing, suggest that the board did not consider them as being conditions precedent to the granting of a special use permit."

The appellate court in that case reversed because of lack of findings of fact in the order of the administrative body, because it did not appear that the zoning board in arriving at its decision had even considered certain matters as to performance standards, which the court there held were both conditions precedent as well as conditions subsequent. In the instant case the findings of fact appear unequivocally in the decision of the local liquor control commissioner which the State Liquor Control Commission had before it during the trial de novo.

Section 8 of Article 7 of the Liquor Control Act (Ill Rev Stats 1961, c 43, par 153) provides in pertinent part:

184

"Except as hereinafter provided, any order or action of a local liquor control commissioner . . . revoking or suspending . . . a license . . . may within 20 days after notice of such order or action be appealed from by . . . any person interested, to the State commission, in which event the matter of such order or action of such local liquor control commissioner shall be tried de novo by the State commission as expeditiously as circumstances permit.

". . .

"If after trial de novo hearing or review as provided herein, the State commission . . . shall decide that such license has been improperly . . . suspended . . . , it shall enter an order in conformity with such finding, which order shall be in writing."

In Day v. Illinois Liquor Commission, 39 Ill App2d 281, 188 NE2d 883, the court in construing the above statutory provision said at page 288:

"Section 153 of the Dram Shop Act, which deals with appeals from the order of local liquor control commissioners, provides that the matter of the propriety of such order or action should be tried de novo by the Illinois Liquor Control Commission. An inquiry into the propriety of the act of a local liquor control commissioner in revoking a liquor license involves only a determination of whether or not the local commissioner abused his discretionary power and whether he acted arbitrarily and without good cause in revoking the license."

By substituting the word *suspending* for the word *revoking* wherever it appears in the above quote, the

185

language of the court becomes equally applicable to the case at bar.

The finding made by the State commission was that the evidence heard by it justified the order as entered by the liquor control commissioner of DuPage County in all respects except that part placing appellants on six months probation, and that no sufficient cause or reason had been presented to the commission why the order of the local liquor control commissioner should be otherwise reversed or set aside. Such finding was all that the statute required.

The finding by the liquor control commissioner that a sale of alcoholic liquor had been made to a minor was in the record before the State Liquor Control Commission and before the circuit court to which record the circuit court and this court look. This case did not present complex factual issues. It presented a simple factual issue, namely, did the plaintiffs illegally sell intoxicating liquor to a minor.

We are of the opinion that the record reviewed by the circuit court and the record before us sufficiently shows the basis for the revocation, and the order of the State Liquor Control Commission properly passed upon and decided the propriety of the order of the local liquor control commission.

The order of the circuit court is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.