BENCHWARMERS, INC., d/b/a Hi-Tops Cafe, *et al.*, Plaintiffs and Counterdefendants-Appellees and · Cross-Appellants, v. RICHARD M. DALEY, Mayor and Local Liquor Control Commissioner of the City of Chicago, Defendant and Counterplaintiff-Appellant and Cross-Appellee (The Local Liquor Control Commission of the City of Chicago *et al.*, Defendants).

First District (5th Division)   No. 1—96—0445

Opinion filed December 31, 1997.—Rehearing denied February 6, 1998.

Patricia T. Bergeson, Acting Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellant.

Michael A. Moses and Richard G. Schoenstadt, both of Siegel, Moses, Schoenstadt & Webster, P.C., of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

This case involves cross-appeals from an order of the circuit court determining the propriety of a liquor license suspension for plaintiff, Benchwarmers, Inc., d/b/a Hi-Tops Cafe (Benchwarmers). The Local Liquor Control Commission of the City of Chicago suspended Benchwarmers' liquor license for selling alcoholic liquor to a minor in violation of section 4—60—140 of the Municipal Code of Chicago (the Code). Chicago Municipal Code § 4—60—140 (amended June 10, 1996). The License Appeal Commission of the City of Chicago affirmed the decision but reduced the penalty to a one-day suspension. On consolidated cross-complaints for administrative review filed with the circuit court, the circuit court reversed the suspension order in its entirety, finding that Benchwarmers had been entrapped, and held that the License Appeal Commission does not have authority to modify a decision of the Liquor License Control Commission.

On appeal, defendant, Richard M. Daley, mayor of the City of Chicago and the local liquor control commissioner of the City of Chicago, challenges that portion of the circuit court order reversing suspension of Benchwarmers' liquor license for selling alcoholic liquor to a minor in violation of section 4—60—140 of the Code. Plaintiffs and counterdefendants, Benchwarmers and Edward Warm, president, cross-appeal from the second portion of the circuit court's order holding that, as a matter of law, the License Appeal Commission may not modify a decision of the Local Liquor Control Commission of the City of Chicago. For the following reasons, the order of the circuit court is reversed in part and affirmed in part.

On June 30, 1993, at approximately 9:30 p.m., Carla Stockton,

then 20 years old, entered Benchwarmers' establishment, the Hi-Tops Cafe, and approached the bar. Stockton requested a bottle of Genuine Miller Draft beer from the bartender, Nicole Montgomery. Montgomery served Stockton the beer and Stockton paid for the beer with a marked $10 bill. A few minutes later, Chicago police officer Detective Edward Walz, who had been stationed at the bar in street clothes, informed Montgomery that she had served a minor. Montgomery summoned the manager, Thomas Mulcahy.

On August 17, 1993, Richard M. Daley, in his capacity as both mayor and the local liquor control commissioner of the City of Chicago, served a notice of hearing upon Hi-Tops to respond to allegations:

> "That on or about June 30, 1993, the licensee by and through its agent, Nicole Montgomery, sold, gave or delivered alcoholic beverages on the licensed premises to [C]arla Stockton, a person under the age of 21 years, in violation of Title 4, Chapter 172, § 140, Municipal Code of Chicago."

See Chicago Municipal Code § 4—60—140 (amended June 10, 1996). At the hearing before the Local Liquor Control Commission, Detective Edward Walz testified regarding the set up of the sale of alcohol to the minor. Walz entered Hi-Tops a few minutes before the minor and sat at the bar. Walz ordered a draft beer and spoke to the bartender for a few moments.

The minor, Carla Stockton, testified that on June 30, 1993, she was 20 years old. Stockton testified that she was wearing black jeans, a black silk shirt, and makeup. As Stockton entered the bar, the doorman asked her for identification. When she explained that she did not have any and asked if she needed identification to enter, the doorman said she did not need any identification. Stockton approached the bar, asked Montgomery for a Miller Genuine Draft and proceeded to pay for the beer.

According to the bartender, Nicole Montgomery, Stockton entered the bar with two men who appeared to be close to 50 years old. Montgomery testified that Stockton was dressed in "a sweater and a dowdy skirt *** cut very matronly" and was wearing loafers. Montgomery testified that Detective Walz sat at the bar and talked about sports. Walz did not pay for his beer right away and Montgomery testified that she felt Walz was wasting her time. Montgomery served Stockton the beer and took the money. Montgomery stated that she did not ask for identification because Stockton had entered with the two older men and Stockton looked as if she was over 25 years old. According to Montgomery, Stockton was not nervous but instead was "very aggressive and very secure" in her demeanor. The

manager of Hi-Tops, Thomas Mulcahy, also testified that Stockton appeared to be at least 24 years old.

The president of Benchwarmers, Edward Warm, testified that the Hi-Tops doorman is instructed to ask for identification from anyone who appears to be younger than 25 years old. The bartenders also are required to ask for identification if the person looks to be under 25 years of age.

Based on the foregoing evidence, the hearing officer of the Mayor's License Commission first determined that the defense of entrapment was "inapplicable to these administrative proceedings." Even if the defense were appropriate, the hearing officer determined that the licensee failed to comply with the legal prerequisites for an entrapment defense. Regardless, the hearing officer found that, under the facts of the case, Benchwarmers had not shown the inducement or incitement necessary to establish an entrapment defense. On May 13, 1994, the Local Liquor Control Commission (LLCC) entered an order finding Benchwarmers guilty of serving alcohol to a minor, in violation of section 4—60—140 of the Code, and imposed as a penalty a five-day license suspension on Benchwarmers. Benchwarmers appealed to the License Appeal Commission (LAC). On December 19, 1994, the LAC entered an order affirming the decision of the LLCC but reduced the penalty imposed from a five-day suspension to a one-day suspension. The LAC denied both parties' petitions for rehearing.

Benchwarmers filed a complaint for administrative review with the circuit court to review the LLCC's decision that Benchwarmers was not entrapped. Mayor Daley and the LLCC also filed a complaint seeking judicial review of the administrative decision of the LAC in modifying the sanction imposed by the LLCC. That action named Benchwarmers and the License Appeal Commission of the City of Chicago as defendants. 735 ILCS 5/3—101 et seq. (West 1996). The actions were consolidated before the circuit court.

The circuit court first determined that the LAC does not have authority to modify a decision of the Commission. The court also determined that the entrapment defense was available and Benchwarmers was "blatantly entrapped." The court found that the LLCC's findings were contrary to the manifest weight of the evidence and reversed the suspension of Benchwarmers' liquor license.

On appeal, Mayor Daley (Daley) challenges the circuit court's order applying the defense of entrapment to Benchwarmers' license suspension. Daley argues that the defense of entrapment is not applicable to such administrative proceedings. Regardless, under the facts, Daley urges that the LLCC correctly determined that Benchwarmers was not entrapped. Benchwarmers cross-appeals from the

circuit court's determination that the License Appeal Commission does not have authority to modify a decision of the Local Liquor Control Commission.

We begin with the statutory construction issue raised by Benchwarmers' cross-appeal. The circuit court determined that the License Appeal Commission does not have authority to modify a decision of the Local Liquor Control Commission. Statutory construction presents a question of law, which we review *de novo*. *Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637, 640 (1997).

■ The Illinois Liquor Control Act of 1934 (Act) sets forth the procedures a licensee follows for appealing a decision of a local liquor control commission. 235 ILCS 5/7—5, 7—9 (West 1996). The Act distinguishes between license appeals for premises located outside a city, village or incorporated town having a population of 500,000 or more inhabitants, and for premises located within a city, village or incorporated town having a population of 500,000 or more inhabitants. Appeals regarding licenses for premises in municipalities under 500,000 are directed to the Illinois Liquor Control Commission, the state commission authorized to hear and determine appeals from local commissions. 235 ILCS 5/1—3.19, 3—1, 3—12 (West 1996). Appeals regarding licenses for premises in municipalities over 500,000 are directed to the local license appeal commission for that particular municipality. 235 ILCS 5/7—8 (West 1996). This court previously has taken judicial notice that Chicago is the only town in Illinois with a population greater than 500,000 inhabitants. *Rincon v. License Appeal Comm'n*, 62 Ill. App. 3d 600, 606, 378 N.E.2d 1281, 1286 (1978). Thus, appeals regarding licenses for premises in the City of Chicago are directed to the License Appeal Commission of the City of Chicago.

The Act explains that, for licenses revoked or suspended for premises in municipalities less than 500,000, the licensee may appeal to the Illinois Liquor Control Commission, which may render a decision "*sustaining, reversing or modifying* the order of the local liquor control commissioner." (Emphasis added.) 235 ILCS 5/7—5 (West 1992). In contrast, for licenses revoked or suspended for premises in municipalities over 500,000, the licensee may appeal to the License Appeal Commission of the City of Chicago, which "[w]ithin 20 days after the filing of such appeal the license appeal commission shall render a decision *sustaining or reversing* the order of the local liquor control commissioner." (Emphasis added.) 235 ILCS 5/7—5 (West 1992).

Benchwarmers argues that the disparity between the two provisions enumerating the powers of the Chicago License Appeal Commission and the state commission is not conclusive. Benchwarmers

cites section 7—9 of the Act, which contains a "parity provision" stating that the appeal provisions of sections 7—9 (explaining the procedure for appeals from an order of a local commission) and 7—10 (explaining service of copies of decisions and rehearing procedures) relate to both the License Appeal Commission and the state commission. 235 ILCS 5/7—9, 7—10 (West 1996). Benchwarmers also argues that, if the powers of the two appeals commissions are not similarly construed, an otherwise unconstitutional distinction is made in the appeal process for municipalities with populations under 500,000 and over 500,000. Benchwarmers does not challenge the LAC's inability to review such proceedings *de novo*. Instead, Benchwarmers argues that allowing the state commission to modify decisions, based on the record, but not allowing the LAC to do the same is an unconstitutional distinction violative of due process.

■ Both arguments are unavailing. First, the review powers of both the License Appeal Commission and the state commission are enumerated in section 7—5 of the Act. Thus, we question the relevance of the "parity provision" of section 7—9. The plain language of section 7—5 draws a clear distinction in the appellate powers bestowed on the License Appeal Commission and the state commission. The License Appeal Commission may sustain or reverse a decision whereas the state commission may sustain, reverse or modify a decision.

Second, the legislature's decision to divide such powers along population lines is valid when rationally related to a legitimate governmental purpose. *Johnkol, Inc. v. License Appeal Comm'n*, 42 Ill. 2d 377, 247 N.E.2d 901 (1969); *Maldonado v. License Appeal Comm'n*, 100 Ill. App. 3d 639, 643, 427 N.E.2d 225, 228 (1981). On appeal, Daley explained the difference in appellate powers in terms of sheer numbers. Accord *Rincon*, 62 Ill. App. 3d at 605-06, 378 N.E.2d at 1286. The City of Chicago provides and regulates many more licenses than the rest of the state. Accordingly, the Local Liquor Control Commission of the City of Chicago has developed an expertise that many other local commissions may not have. Given the LLCC's greater expertise, the legislature may have seen fit to defer to the local decisions made in Chicago more so than in other areas. Thus, the plain language of the statute indicates that the License Appeal Commission may only affirm or reverse a decision of the Local Liquor Control Commission. We find this to be a rational reason for the valid distinction in appellate powers of the License Appeal Commission and the state commission.

■ The second issue is whether the defense of entrapment may be asserted during a liquor license revocation or suspension proceeding.

The Liquor Control Act grants broad authority to the local liquor commission to revoke or suspend a liquor license:

"The local liquor control commissioner may revoke or suspend any license issued by him if he determines that the licensee has violated any of the provisions of this Act or of any valid ordinance or resolution enacted by the particular city council, president, or board of trustees or county board (as the case may be) or any applicable rule or regulations established by the local liquor control commissioner of the State commission which is not inconsistent with law." 235 ILCS 5/7—5 (West 1996).

The sale of alcohol to a minor violates sections 6—16 and 7—5 of the Liquor Control Act and section 4—60—140 of the Chicago Municipal Code.

■ Procedurally, neither the Liquor Control Act nor the Chicago Municipal Code enumerates the defenses available in a license revocation or suspension proceeding. The "Rules of Procedure for Contested Hearings Before the Mayor's License Commission and Local Liquor Control Commission" provide:

"Rulings on the admission and exclusion of evidence are within the discretion of the Deputy Commissioner. The rules of evidence and privilege as applied in civil cases in the circuit courts of the State of Illinois shall be followed. However, evidence not admissible under such rules of evidence may be admitted if it is of a type commonly relied upon by prudent persons in the conduct of their affairs. *Compare* Illinois Administrative Procedure Act, 5 ILCS para. 100/10—40(a) (1992). The purpose of rulings on evidence shall be to promote the finding of truth and to seek the greatest accuracy in the determination of facts."

In this case, the hearing officer determined that the defense of entrapment does not apply to these types of administrative proceedings.

On appeal, Daley argues persuasively that the statutory entrapment defense contained in the Illinois Criminal Code of 1961 (720 ILCS 5/7—12 (West 1996)) applies only to criminal "offenses." Under the entrapment defense in effect at the time of the sale:

"A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated." 720 ILCS 5/7—12 (West 1992).

An offense is defined as the violation of any "penal statute." 720 ILCS 5/2—12 (West 1992).

Benchwarmers cites no authority that this statutory defense has been used in the civil context. Instead, Benchwarmers points to several Illinois cases that discuss the entrapment defense in liquor license cases, although no court has considered the validity of applying the defense. For example, in *Roberts v. Illinois Liquor Control Comm'n*, 58 Ill. App. 2d 171, 179, 206 N.E.2d 799, 803 (1965), the court found that there was no entrapment when the minor asked for, and received, a quart of beer. In finding that the defense of entrapment did not apply, the court stated:

> "It is well settled that where nothing more than a simple request to make an unlawful sale of an intoxicant appears, the fact that the solicitation was by a decoy, does not make the defense of entrapment available [citations], and it is immaterial that the governmental agency supplied the money for the purchase [citations]." *Roberts*, 58 Ill. App. 2d at 179, 206 N.E.2d at 803.

Likewise, in *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill. App. 2d 264, 276, 254 N.E.2d 814, 820 (1969), the appellate court referenced the circuit court's determination regarding entrapment but determined that the LLCC had found sufficient evidence of solicitation.

■ As a matter of law, the statutory defense of entrapment as contained in the Illinois Criminal Code is unavailable in liquor license revocation and suspension proceedings. However, the rules of procedure as promulgated by the Mayor's License Commission and Local Liquor Control Commission indicate that evidentiary decisions lie within the discretion of the deputy commissioner. The hearing officer in this case determined that the entrapment defense was "inapplicable to these administrative proceedings." We decline to read this particular statement as a blanket exclusion of the entrapment defense and find that its applicability is to be determined when the facts indicate egregious governmental misconduct.

Under the facts of this case, the hearing officer correctly determined that the facts did not evidence any indicia of entrapment. Thus, the circuit court erred in finding that Benchwarmers was "blatantly entrapped." Judicial review of an administrative agency's factual determinations is limited to whether the agency's factual findings were against the manifest weight of the evidence. *Roach Enterprises, Inc. v. License Appeal Comm'n*, 277 Ill. App. 3d 523, 528, 660 N.E.2d 276, 280 (1996). If any evidence in the record supports the agency's determination, that determination must be affirmed. *Roach Enterprises*, 277 Ill. App. 3d at 528, 660 N.E.2d at 280.

Here, the hearing officer reasonably could determine that there was no evidence to demonstrate that Benchwarmers was induced to serve the minor. Admittedly the minor appeared to be 24 years old.

It was Benchwarmers' policy, however, to ask for identification from anyone appearing to look under 25 years old. Under these facts, the minor walked into the bar, requested a beer, and was served a beer. There was a request and a purchase. The hearing officer's finding that there was no entrapment was not against the manifest weight of the evidence.

In conclusion, the circuit court correctly determined that the License Appeal Commission does not have the authority to modify a decision rendered by the Local Liquor Control Commission. The circuit court erred, however, in applying the entrapment defense to liquor revocation proceedings under the Illinois Liquor Control Act and in finding that the LLCC's initial determination, that there had been no entrapment, was against the manifest weight of the evidence.

Affirmed in part and reversed in part.

GREIMAN and ZWICK, JJ., concur.