RICHARD M. DALEY, Mayor and Local Liquor Control Commissioner of the City of Chicago, Plaintiff-Appellant, v. LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—98—0502

Opinion filed December 30, 1999.

Brian Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, Richard A. Plescia, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellant.

Siegel, Moses, Schoenstadt & Webster, P.C., of Chicago (Richard C. Schoenstadt and James L. Webster, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Richard M. Daley, mayor and local liquor control commissioner of the City of Chicago, appeals from an order of the circuit court denying plaintiff's motion to review the sanction imposed upon defendants, Ms. Eva's Grocery/Deli, and George Person, president and owner of Ms. Eva's Grocery/Deli, on the grounds that the circuit court lacked jurisdiction. Plaintiff contends on appeal that: (1) the circuit court erred in finding that it lacked jurisdiction to decide whether the Local Liquor Control Commission's original revocation sanction was proper; (2) the License Appeal Commission lacked the authority to remand the case to the Local Liquor Control Commission for further proceedings; and (3) the Local Liquor Control Commission's revocation of defendants' liquor license was proper. For the reasons that follow, we affirm, but on grounds other than those given by the trial court as we may affirm a judgment of the circuit court upon any ground contained in the record, regardless of whether the circuit court relied upon it. See *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 642, 685 N.E.2d 1 (1996).

Ms. Eva's Grocery/Deli (Ms. Eva's), located at 807 North Monticello Avenue in Chicago, is co-owned and operated by George Person and Eva Anderson. On or about November 8, 1993, plaintiff, Richard M. Daley, in his capacity as mayor and local liquor control commissioner of the City of Chicago, issued a notice of hearing informing George Person, as owner and operator of Ms. Eva's, that the Local Liquor Control Commission (LLCC) sought to revoke its liquor license and other business licenses. The notice charged Person and his agents with knowingly possessing a controlled substance with intent to deliver

in violation of several state statutes. The notice further alleged that Person and Anderson possessed two firearms and ammunition without obtaining an Illinois Firearm Owner's Identification Card (FOID card). Neither firearm was registered with the City of Chicago. The record indicates that this matter was the first time in Ms. Eva's 24-year business history that it was formally charged with a sanction.

Evidentiary hearings were held before the LLCC on March 24, April 21, and May 19, 1994. Chicago police officer Anthony Dicristofano testified that on July 16, 1993, he and his partner, Officer Daniel Gutierrez, were dressed as plainclothes officers and entered Ms. Eva's at approximately 6:45 p.m. pursuant to a narcotics investigation. Officer Dicristofano observed Person and Cynthia Sandifer, Eva Anderson's sister, behind the counter. Sandifer looked in Officer Dicristofano's direction and then carried a small envelope box to the meat cooler. After observing Sandifer, Officer Dicristofano walked behind the counter and entered the meat cooler, where he found the envelope box and discovered that it contained $25 and six small brown envelopes. Each envelope contained a green leafy substance, which he suspected was marijuana. The parties subsequently stipulated that if called to testify, chemist Timothy J. Chapman would testify that he weighed the substances in the envelopes and tested them. The test results were positive for the presence of marijuana. Officer Dicristofano testified that, in his opinion, the narcotics were to be used for distribution rather than personal consumption.

Upon further search of the premises, Officer Dicristofano discovered a loaded .380-caliber semi-automatic weapon under the counter. Officer Dicristofano also recovered "drug paraphernalia" consisting of small pill containers of anesitol powder, which is frequently used to cut cocaine, small glass tubes, and empty small brown envelopes which were similar to those found in the meat cooler.

Officer Dicristofano testified that Sandifer told the officers that there was also a .357 Magnum revolver in Anderson's purse under the counter. Anderson subsequently told the officers that she possessed the gun for protection. Officer Dicristofano eventually discovered that neither of the recovered weapons was registered. Person told Officer Dicristofano that he owned the weapons but was not aware that there was marijuana on the premises.

Officer Daniel Gutierrez testified that he was working with Officer Dicristofano on July 16, 1993, and accompanied Dicristofano to Ms. Eva's on that day. Officer Gutierrez discovered the loaded .357 Magnum revolver in Anderson's purse, which was under the counter. Officer Gutierrez further testified that all employees working at Ms. Eva's on that day were detained for questioning.

The defense produced three witnesses at the hearing. Anderson testified that she opened the store that day and that Person and Anthony, the cook, were scheduled to work that afternoon. It was Anthony's job to cut the meat and prepare the food at the meat counter. Anderson testified that Anthony worked in the area where the meat cooler was located. When Anderson returned to the store that afternoon, Person, Sandifer and Jerome, another employee, were present, along with Officers Dicristofano and Gutierrez. Anderson stated that the items in the store described as "drug paraphernalia" had been discontinued and placed in plastic bags in a storage area because they were no longer legal to sell. Anderson further testified that her husband, Person, had been shot during an armed robbery in May 1993; therefore, they possessed the guns for protection.

Sandifer testified that she was not an employee of Ms. Eva's, but worked at the store that day in order to help her sister. After the officers arrived, Sandifer saw one of the officers pull something out of the meat cooler, but at the time, the officer did not show her what he retrieved. Sandifer also testified that although the item the officer removed from the meat cooler was near the area in which Anthony worked, the officer did not detain Anthony. Sandifer further testified that Person attempted to produce an FOID card, but that the officer would not allow him to retrieve it from his wallet.

George Person testified that, at the time the police officers arrived, he was behind the counter at the cash register. There were customers in the store and one of the officers told Anthony to leave. Person further testified that he had possessed the handguns for approximately one week prior to the officers finding them and that he had obtained the handguns for protection because he was robbed and shot approximately one month before the police searched the store. Person admitted that one of the handguns was loaded. Person also testified that he was not aware of the presence of any marijuana in the store. Regarding the presence of "drug paraphernalia," Person testified that when these items could no longer be sold legally, he removed them from the sale counter and stored them.

Person next testified that he did in fact have an FOID card, but that he was told that he had to plead guilty to possession of a firearm without an FOID card in misdemeanor court. When asked whether he had the FOID card the day of the hearing, he testified that it was lost.

On July 15, 1994, the LLCC sustained all charges brought against defendants and issued an order revoking Ms. Eva's business licenses. The LLCC found that by and through Person's agent, Sandifer, Person possessed cannabis with an intent to deliver while on the premises and that Person and Anderson possessed firearms without obtaining

state and city firearm registration certificates. Based on these findings, the business licenses were revoked on August 1, 1994, pursuant to section 7—5 of the Illinois Liquor Control Act of 1934 (Liquor Control Act or Act) (235 ILCS 5/7—5 (West 1994)) and section 4—4—280 of the Municipal Code of Chicago (Chicago Municipal Code § 4—4—280 (1990)).

Person then filed a timely appeal to the License Appeal Commission (LAC). On June 7, 1995, oral arguments were held and the LAC issued an order sustaining all of the LLCC's findings on July 3, 1995. However, the order issued by the LAC reduced the LLCC's revocation penalty to a 30-day suspension. The order indicated that although the LLCC's findings were not arbitrary or capricious, they were not related to the intent of the Liquor Control Act (235 ILCS 5/1—1 *et seq.* (West 1994)). The LAC further determined that revocation was an unduly harsh penalty in light of the appellate court's decision in *Hanson v. Illinois Liquor Control Comm'n*, 201 Ill. App. 3d 974, 559 N.E.2d 1092 (1990).

On July 24, 1995, the LLCC filed a petition for rehearing and a request for oral argument. The LLCC argued that the LAC had no authority to modify a sanction imposed by the LLCC and that the LAC erred when it found that the revocation order was arbitrary and conflicted with the intent of the Liquor Control Act. The LAC denied the LLCC's petition for rehearing on October 18, 1995.

On November 22, 1995, plaintiff filed a complaint for administrative review and sought reversal of the LAC order. The complaint alleged that the LAC's decision to reduce the LLCC's revocation order was arbitrary and against the manifest weight of the evidence because the LAC exceeded its statutory authority regarding review of the LLCC's orders.

The circuit court found that the LAC exceeded its authority when it modified the revocation sanction imposed by the LLCC and remanded the case to the LAC "for reconsideration of their order in this matter in light of this court's ruling." The circuit court did not rule on the propriety of the revocation order. On April 16, 1997, the LAC issued an order sustaining the LLCC's findings of fact. The LAC also reversed and remanded the matter to the LLCC "with instructions to modify the penalty of [r]evocation which is too severe." In response, the LLCC filed a petition for rehearing before the LAC. The LAC denied this petition on May 19, 1997.

On June 30, 1997, the LLCC imposed a 30-day suspension but stated that it issued this penalty solely out of deference to the LAC's order and that revocation was the only appropriate penalty. Person served the suspension from July 11, 1997, to August 10, 1997.

On August 18, 1997, the LLCC filed a motion with the circuit court requesting a review of the propriety of the LLCC's original sanction of revocation and argued that because the circuit court had not decided all of the issues that were present in the LLCC's complaint for administrative review, the circuit court retained jurisdiction to review the LLCC's July 15, 1994, revocation order.

On January 8, 1998, the circuit court denied the LLCC's motion finding that it lacked jurisdiction to review the initial revocation. The circuit court stated that the LLCC should have appealed or sought review of the LAC's order of April 16, 1997, prior to imposing the 30-day suspension. Plaintiff then filed this timely appeal.

Plaintiff first contends that the circuit court erred in concluding that it lacked jurisdiction over the suit. Plaintiff argues that the remand order issued by the LAC on April 16, 1997, was not a final and appealable order; therefore, it was properly appealed to the circuit court after the LLCC's proceedings on remand.

Defendants assert that because plaintiff failed to appeal the 30-day suspension sanction to the LAC before seeking review by the circuit court, jurisdiction was lost. Plaintiff responds that pursuant to section 7—5 of the Liquor Control Act, only a licensee—not the LLCC—may appeal an order of the LLCC. We agree that the LLCC could not appeal its own order to the LAC.

■ However, we also agree with the circuit court that the LLCC should have asked the circuit court to review the LAC's order of April 16, 1997, prior to imposing the 30-day suspension. Section 7—11 of the Liquor Control Act provides that judicial review of an order by the LAC "may be requested by any party in interest, including but not limited to the local liquor control commissioner." 235 ILCS 5/7—11 (West 1998). In the instant case, after the LAC remanded the case to the LLCC with instructions to impose a sanction less than revocation, the LLCC could have appealed the LAC's order or complied with it. It chose to comply with the order after the LAC denied its petition for rehearing.

Upon remand, the LLCC, pursuant to sections 4—4(1) and 7—5 of the Act, had the authority to impose a fine, a suspension of up to 30 days, or both. Rather than accept the remand, however, the LLCC could have sought judicial review of the LAC's order under section 7—11. The LLCC chose not to do this. We affirm the holding of the circuit court that the LLCC should have sought review of the April 16, 1997, order prior to following it and suspending Ms. Eva's liquor license.

■ While we affirm the circuit court's denial of plaintiff's motion to review the sanction imposed upon defendants, we also hold that the

circuit court had jurisdiction to review the actions of the LLCC and LAC.

To be appealable, an order must be final and terminate the litigation between the parties. *Brooks v. Board of Fire & Police Commissioners*, 181 Ill. App. 3d 714, 715, 537 N.E.2d 444 (1989). Section 3—104 of the Administrative Review Law provides that "[t]he court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action." 735 ILCS 5/3—104 (West 1998). Where the circuit court has the power to remand an agency decision, jurisdiction remains with the circuit court until final disposition of the matter and only then does this court have jurisdiction. *Brooks*, 181 Ill. App. 3d at 715. More specifically, an order remanding a cause to an agency to impose a sanction other than that imposed is not final and appealable because it does not terminate the litigation between the parties on the merits. *Johnson v. Department of Corrections*, 187 Ill. App. 3d 804, 809, 543 N.E.2d 847 (1989). Review of that sanction by the circuit court is a critical procedural step to ensure that the entire record of the case is before this court. See *Johnson*, 187 Ill. App. 3d at 809. "Only after the circuit court reviews the results of the agency's additional proceedings upon remand, and enters a subsequent order thereon, is the litigation between the parties terminated." *Johnson*, 187 Ill. App. 3d at 809. Therefore, we hold that the circuit court erred in finding that it lacked jurisdiction over the matter.

Plaintiff next contends that the LAC lacked the statutory authority to remand the matter to the LLCC with instructions to impose a sanction other than revocation. Plaintiff asserts that, based on this court's recent holding in *Benchwarmers, Inc. v. Daley*, 294 Ill. App. 3d 385, 690 N.E.2d 622 (1997), remand was improper. In response, defendants assert that plaintiff has waived its claim that the LAC has exceeded its authority because plaintiff failed to raise the issue before the circuit court.

■ Generally, issues raised for the first time on appeal are waived. However, this rule is not rigid and inflexible. *Hebb v. Beegle*, 135 Ill. App. 3d 157, 481 N.E.2d 846 (1985). The rule of waiver is an admonition to the litigants, not a limitation upon the jurisdiction of the reviewing court. Therefore, we recognize that the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver pursuant to Supreme Court Rule 366(a)(5). 134 Ill. 2d R. 366(a)(5); *American Federation of State, County & Municipal Employees, Council 31 v. Department of Central Management Services*, 288 Ill. App. 3d 701, 710, 681 N.E.2d 998 (1997). Consequently, because

*Benchwarmers, Inc. v. Daley* was a case of first impression on this issue and had not been released at the time the parties in this case were before the LAC or the circuit court, we will consider the merits of plaintiff's argument on appeal.

■ In addressing the merits, we first examine the plain language of the Liquor Control Act. Section 7—5 of the Liquor Control Act authorizes the suspension or revocation of local licenses and states in pertinent part:

> "If the premises for which the license was issued are located within a city, village or incorporated town having a population of 500,000 or more inhabitants, the licensee shall have the privilege, within a period of 20 days after the receipt of such order of fine, suspension or revocation, of appealing the order to the local license appeal commission and upon the filing of such an appeal by the licensee the license appeal commission shall determine the appeal upon certified record of proceedings of the local liquor commissioner in accordance with the provisions of Section 7—9. Within 30 days after such appeal was heard the license appeal commission shall render a decision sustaining or reversing the order of the local liquor control commissioner." 235 ILCS 5/7—5 (West 1996).

Section 7—9 states as follows:

> "In the event such appeal is from an order or action of a local liquor control commissioner of a city, village or incorporated town of 500,000 or more inhabitants, imposing a fine or refusing to impose a fine on a licensee, revoking or suspending or refusing to revoke or suspend a license, the license appeal commission shall determine the appeal by review of the official record of the proceedings of such local liquor control commissioner. *** Within 30 days after such appeal was heard, the license appeal commission shall render its decision in accordance with the provisions of Section 7—5." 235 ILCS 5/7—9 (West 1996).

The issue of statutory construction is a question of law and is reviewed *de novo. Lucas v. Lakin*, 175 Ill. 2d 166, 171, 676 N.E.2d 637 (1997). In examining statutory construction, we must give effect to the language and the intent of the legislature. *People v. Hicks*, 164 Ill. 2d 218, 222, 647 N.E.2d 257 (1995). To accomplish this goal, the entire statute must be considered, and words used should be given their plain and ordinary meanings. *Hicks*, 164 Ill. 2d at 222. The language of a statute must be viewed as a whole, such that each section of the statute is examined in relation to every other section. *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 185, 606 N.E.2d 1154 (1992). In considering legislative intent, courts must presume that the legislature did not intend absurdity, inconvenience or injustice, and select an interpretation of the statute which leads to logical results and avoids

that which would be absurd. *People v. Liberman*, 228 Ill. App. 3d 639, 647, 592 N.E.2d 575 (1992).

*Benchwarmers* specifically addressed the statutory construction of sections 7—5 and 7—9 of the Liquor Control Act and whether the plain language of the statute authorizes the LAC to modify an order to the LLCC. In *Benchwarmers*, the license of the plaintiff, Benchwarmers, Inc., d/b/a Hi-Tops Café, was suspended for selling alcoholic beverages to a minor. The License Appeal Commission affirmed the decision but reduced the penalty to a one-day suspension. On review by the circuit court, the court found, *inter alia*, that the License Appeal Commission did not have authority to modify a decision of the Local Liquor Control Commission.

On appeal, this court noted that the statute distinguished between municipalities with less than 500,000 inhabitants, in which licensees may appeal to the Illinois Liquor Control Commission, which may then render a decision sustaining, modifying or reversing the order (235 ILCS 5/7—5 (West 1996)), and municipalities with more than 500,000 inhabitants, in which the licensee may appeal to the License Appeal Commission, which then has only the authority to sustain or reverse a decision (235 ILCS 5/7—5 (West 1996)). This court held that the legislature's decision to divide this authority along population lines is valid as it is rationally related to a legitimate governmental purpose. *Benchwarmers*, 294 Ill. App. 3d at 390. Therefore, "[g]iven the LLCC's greater expertise, the legislature may have seen fit to defer to the local decisions made in Chicago more so than in other areas. Thus, the plain language of the statute indicates that the License Appeal Commission may only affirm or reverse a decision of the Local Liquor Control Commission." *Benchwarmers*, 294 Ill. App. 3d at 390.

Defendants argue that *Benchwarmers* is not controlling in this case because, here, the LAC did not modify the LLCC's order, it merely remanded the case to the LLCC with instructions. Defendants specifically assert that the wide latitude given to the LAC and its incidental powers as an administrative body includes the authority to do all that is reasonably necessary to execute that power or to perform the duty, which would include the entry of orders to facilitate the appellate hearing process by redirecting a matter back to the LLCC to reconsider its prior position.

■ We hold that in analyzing the plain language of the statute, the LAC does not have the authority to instruct the LLCC to modify a sanction in cities with a population of more than 500,000. When "an enactment is clear and unambiguous a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not

express." *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990). Defendants urge us to find that the implied authority provided to the administrative agencies extends the incidental powers of the LAC to include remanding a sanction issued by the LLCC with instructions to modify it. We reject this argument because authority to remand with instructions is not necessary to accomplish the objective of the expressly granted powers of affirming or reversing the LLCC's orders. To hold otherwise would eviscerate this court's holding in *Benchwarmers*. Thus, we hold that the LAC exceeded its authority in remanding the case and instructing the LLCC to impose a sanction other than revocation.

To summarize, we hold that the circuit court erred in finding that it lacked jurisdiction to consider the order issued by the LAC on April 16, 1997. We also hold that the LAC exceeded its statutory authority by remanding the matter to the LLCC with instructions to issue a sanction other than revocation. Finally, we affirm the trial court's denial of the LLCC's motion to review the 30-day suspension imposed by the LLCC.

Affirmed.

THEIS, P.J., and GREIMAN, J., concur.