(text box: 1)
 NO. 5-99-0763

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

LINDA JANES, Individually and as ) Appeal from the

Administrator of the Estate of Phillip Ernest ) Circuit Court of

Janes, Deceased, ) Williamson County.  

)

Plaintiff-Appellant and )

Cross-Appellee, )

v. ) No. 95-MR-76,

) No. 95-MR-77, &

WESTERN STATES INSURANCE ) No. 95-MR-78

COMPANY, LEE HOOKER, Executor of the )

Estate of Charles R. Church, Deceased, and )

LEE HOOKER, Executor of the Estate of )

Connie H. Church, Deceased, )

)

Defendants, )

and )

)

RUSSELL HARRIS, Administrator of the )

Estate of Jerry G. Harris, Deceased, RUSSELL )

HARRIS, Administrator of the Estate of Cleo )

Harris, Deceased, )

)

Defendant-Appellee, )

and )

)

TRANSAMERICA INDEMNITY COMPANY, )

A/K/A TIG INSURANCE COMPANY, )

) Honorable

Defendant-Appellee and ) C. David Nelson, 

Cross-Appellant.   ) Judge, presiding.  

___________________________________________________________________________

PRESIDING JUSTICE CHAPMAN delivered the opinion of the court:

Linda Janes (plaintiff), individually and as the administrator of the estate of Phillip Ernest Janes, filed a declaratory judgment action in the circuit court of Williamson County regarding her underinsured-motorist coverage through Transamerica Indemnity Company, also known as TIG Insurance Group (defendant).  On cross-motions for summary judgment, the court entered judgment in part for plaintiff and in part for defendant.  Plaintiff appeals and defendant cross-appeals.  The appeal raises numerous issues.

I.  FACTS

Plaintiff and her husband, Phillip Ernest Janes, were policyholders of an insurance policy on a Nissan van.  On October 1, 1993, Phillip was driving the van and plaintiff was a passenger.  There were four other occupants:  Cleo Harris and her husband, Jerry Harris, and Connie Church and her husband, Charles Church.  A vehicle driven by Alice Phelps crossed the center line and collided with the van.  Plaintiff suffered serious injuries.  Plaintiff claims that she was in intensive care until October 21, 1993, and that her medical bills total $162,226.43.  All the other occupants of the van died.  Defendant concedes that the damages exceed all alleged policy limits.  Phelps’s liability insurance provider tendered her policy limits of $50,000.

Plaintiff and her husband were the named insureds on two separate insurance policies. One policy was issued by Western States Insurance Company (Western States), the other by defendant.

The insuring-agreement section for the underinsured-motorist coverage of the policy issued by defendant provided, "We will pay under this coverage only after the limits of liability under any applicable bodily injury bonds or policies have been exhausted by payment of judgment or settlements." 

Defendant issued a document entitled "Split Underinsured Motorists Limits" instructing plaintiff that the first paragraph of the limit of liability in the original endorsement was replaced by the following:

"LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services[,] or death[] arising out of 'bodily injury' sustained by any one person in any one accident.  Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for 'bodily injury' resulting from any one accident.  This is the most we will pay regardless of the number of:

1. 'Insureds;'

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident."

The schedule did not list the limit of liability.

The declarations page has a section entitled "Coverages & Limits," which lists horizontally across the top a Nissan GXE van, a Dodge Shadow, and a Dodge pickup.  Listed in the first column are the coverages provided:  bodily injury liability, property damage, medical payments, uninsured/underinsured motorists, property damage/uninsured motorists, other than collision, and collision.  In this column, after the listing of bodily injury liability and after the listing of uninsured/underinsured motorists, there is an asterisk (*).  In the left margin, alongside the first column, is this legend:  "* PER PERSON/PER ACCIDENT OR OCCURRENCE PER POLICY PROVISION; 000 OMITTED."  The remaining columns list dollar amounts for the limits of coverage and for premiums.  

For each vehicle there are two columns, one listing the limits of coverage and the other listing the premium.  For example, on the line for uninsured/underinsured motorists, the columns read $50/100 and $14 (under Nissan GXE van), $50/100 and $13 (under Dodge Shadow), and $50/100 and $13 (under Dodge pickup).  At the bottom of the columns listing the premiums, the premiums for each vehicle are subtotaled.  These subtotals are referred to as "PREMIUM PER CAR" (
e.g.
, $178 under Nissan GXE van).  Under this section, on the right side of the page, there is a box listing the "TOTAL SEMI[]ANNUAL PREMIUM" at $513.

On September 29, 1995, plaintiff filed a 16-count complaint for declaratory judgment against Western States and defendant.  Plaintiff asked that the coverage given by defendant be stacked, for a total of $300,000 in coverage.  Plaintiff asked, in the alternative, that if defendant’s coverage were deemed to be $100,000, it still be stacked with the coverage from Western States.  Western States tendered its policy limits of $50,000 after the declaratory judgment action was filed.

On July 17, 1998, defendant filed a petition for leave to deposit proceeds, seeking to deposit $50,000 with the circuit clerk.  Plaintiff filed an objection, conceding that defendant could deposit the funds but objecting to a deposit that would relieve defendant of any liability beyond the deposit.  In a docket entry, the court ordered as follows:

"The Petition will be granted.  Order to be submitted.  Deposit allowed but not to be construed as any determination of any of the issues pending between parties[,] such as stacking, interest, set[]off, etc.  Order to be submitted."

There is no indication in the record that a proposed order was submitted or a deposit made.

Plaintiff filed a motion for summary judgment, and defendant filed a cross-motion.  On April 8, 1999, the court entered an order finding that the policy issued by defendant "stacked," making the total coverage from defendant $300,000.  The court also found that defendant’s policy should be aggregated with Western States’ coverage of $50,000, for a total of $350,000.  The issues regarding applicable setoffs were reserved pending further hearing.  Plaintiff then filed a motion asking for sanctions for vexatious and unreasonable failure to pay.  See 215 ILCS 5/155 (West 1998); 735 ILCS 5/2-1005(a) (West 1998). On October 19, 1999, the court entered an order denying all claims against defendant for bad faith.  The court also granted defendant a setoff for the total amount of $50,000 paid by Phelps’s insurer.  The court ruled that all the insurance proceeds should be divided equally among the six claimants (one for each occupant of the Janes vehicle).  The court awarded each of the six claimants $8,333.33 from the deposit previously made by Western States and $41,666.66 from defendant.

Plaintiff appeals.  Defendant cross-appeals. 

II.  ANALYSIS

A.  Stacking

Plaintiff contends that defendant’s delay in payment is vexatious and unreasonable as case law clearly establishes that the policy allows coverages to be stacked.  Defendant contends that the policy was unambiguous and that the trial court, therefore, erred in stacking the coverage.  We find that case law has directly addressed the arrangement of this policy format such that there is no 
bona fide
 dispute that stacking is permissible.

In 
Allen v. Transamerica Insurance Co.
, 128 F.3d 462 (7th Cir. 1997), the Seventh Circuit allowed the plaintiff to stack underinsured-motorist coverages.  In 
Allen
, the plaintiff had two vehicles, each having an underinsured-motorist liability limit of $50,000 per person and $100,000 per incident.  
Allen
, 128 F.3d at 464.  The policy also contained a limit-of-liability provision identical to the one in this case.  As in the case at hand, the schedule was left blank, and the declarations page was the only place that set forth the limits of the policy. 

As a federal court having jurisdiction through diversity, the 
Allen
 court interpreted Illinois law.  The court found that "the precise factual scenario" before it had been addressed in 
Bruder v. Country Mutual Insurance Co.
, 156 Ill. 2d 179, 620 N.E.2d 355 (1993).  
Allen
, 128 F.3d at 467.  In 
Bruder,
 the plaintiff attempted to stack the underinsured-motorist coverage for two pickup trucks.  The 
Bruder
 court held that the antistacking clause, when read together with the declarations page, was unambiguous because the limit of underinsured-motorist coverage was listed only once above the columns in the middle of the page and was not repeated in the columns.  The 
Bruder
 court analyzed the columnar arrangement of the declarations page and made clear that its decision hinged on the limits not being repeated in the columns.  The 
Allen
 court quoted 
Bruder
:

" 'Understanding the arrangement of entries in the columns is important in determining the effect of what is not there included.  Specifically, the limits of liability are not set out within the column arrangement in the same manner as the page lists the premium amounts and totals.  That is, there is no column for which the limit of liability for bodily injury is to be listed like a premium amount so that the $100,000 limit for each person would appear in both sentence-like lines for the pickup trucks. 

It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured.  It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck.  There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks.  It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded.' "  (Emphasis omitted.)  
Allen
, 128 F.3d at 465 (quoting 
Bruder
, 156 Ill. 2d at 192, 620 N.E.2d at 362).  

The 
Allen
 court found 
Bruder
 dispositive on the issue and stacked the insurance coverage. 

The 
Allen
 court pointed out that the antistacking clause did not prevent stacking, because the clause did not erase the ambiguity created by the declarations sheet.  The cases cited by the defendant in 
Allen
, the same cases cited by defendant in the case at hand, were therefore found to be irrelevant:  
Frigo v. Motors Insurance Corp.
, 271 Ill. App. 3d 50, 648 N.E.2d 180 (1995); 
Menke v. Country Mutual Insurance Co.
, 78 Ill. 2d 420, 401 N.E.2d 539 (1980); and 
Obenland v. Economy Fire & Casualty Co.
, 234 Ill. App. 3d 99, 599 N.E.2d 999 (1992).  These cases are similarly irrelevant to our decision here.

Defendant contends that the 
Allen
 court failed to address a feature of the declarations sheet.  According to defendant, the asterisk on the declarations sheet instructs the policyholder that the limits in each column are "per policy provision."  The 
Allen
 court did not deliberate on the presence of an asterisk, so we cannot be certain whether the defendant raised this argument in its previous round as appellee.  In any event, we find the argument to be far from credible.  The asterisk does not remove the ambiguity.  A reasonable person could still read the coverages as cumulating when the declarations page is read laterally.  In fact, the asterisk itself could be seen as adding to the confusion.  In order to find the answer that defendant contends is meant, the policyholder must refer back to the endorsement "provision" that first referred him to the declarations page (and the schedule).  This complicated process certainly does not clear up the ambiguity. 

Plaintiff contends that because it is so clearly established that the coverage of this policy stacks, defendant’s failure to pay is vexatious conduct prohibited by the Illinois Insurance Code (215 ILCS 5/155 (West 1998)).  The refusal to settle is not vexatious 
per se
.  The statute is not violated merely because an insurance company is unsuccessful in contesting the scope of coverage or the magnitude of the loss.  
McGee v. State Farm Fire & Casualty Co.
, 315 Ill. App. 3d 673, 681, 734 N.E.2d 144, 150 (2000).  The determination is based on the insurer’s attitude, considering the totality of circumstances.  
Green v. International Insurance Co.
, 238 Ill. App. 3d 929, 935, 605 N.E.2d 1125, 1129 (1992).  Whether an insurer’s conduct is vexatious and unreasonable is a question of fact, and a trial court's determination on the issue will not be reversed unless an abuse of discretion is demonstrated in the record.  
Millers Mutual Insurance Ass'n v. House
, 286 Ill. App. 3d 378, 387, 675 N.E.2d 1037, 1043 (1997).  A delay in settling a claim may be vexatious if there is no 
bona fide
 dispute about coverage.  
Keller v. State Farm Insurance Co.
, 180 Ill. App. 3d 539, 555, 536 N.E.2d 194, 204 (1989). 

Defendant contends that there was a 
bona fide
 dispute.  Defendant points out that 
Allen
 was a federal case.  Defendant also contends that the language from 
Bruder
 relied upon in 
Allen
, and in our decision here, was 
dictum
.  Therefore, defendant argues, 
Allen
 and 
Bruder
 are not controlling authority.  The resemblance to 
Allen
 and the clarity of 
Bruder
 belie defendant’s position.

Defendant’s emphasis on 
Allen
 being a federal case ignores the closeness of 
Allen
 to the case at hand.  
Allen
 is not just similar to the case at hand; it is virtually identical.  The limit-of-liability clauses are the same, and the declarations sheets use the same format.  Indeed, Transamerica Indemnity Company is the defendant in both cases.

Defendant correctly contends that since 
Allen
 was tried in federal court, it is not controlling in this case.  It is, however, incredibly persuasive authority.  The fragility of defendant’s claim is exposed by reading the 
Allen
 opinion.  The 
Allen
 court was not strained to find Illinois law.  The court relied heavily on 
Bruder
, quoting the same language we have used above.  
Bruder
 provided clear precedent for the 
Allen
 court.  
Bruder
 is also controlling of this case.  Defendant contends that the relevant language in 
Bruder
 is 
dictum
 and, therefore, not controlling.  Nonetheless, the directness of the language in 
Bruder
 leaves no doubt as to what the law is in Illinois.

In 
Pekin Insurance Co. v. Estate of Goben
, 303 Ill. App. 3d 639, 707 N.E.2d 1259 (1999), this court addressed the 
Bruder
 decision.  In 
Goben
, as in this case, there was no limit of liability printed in the endorsement, and the insured was instructed to refer to the declarations page to determine the limits of coverage.  The declarations page listed the coverage for several vehicles in separate columns.  In citing to 
Allen
 and 
Bruder
, we held that the policy was ambiguous and, therefore, allowed stacking.   

Goben
 itself establishes clear precedent which leaves no 
bona fide
 dispute that stacking is allowed under the policy in the case at hand.  The fact that our opinion in 
Goben
 was released over a year prior to the filing of defendant-appellee’s brief appears to be sufficient indication that defendant’s delay was unwarranted.  Defendant should not be able to claim that the delay was caused by plaintiff not more aggressively pursuing her claim or that plaintiff’s pleading alternative amounts of recovery precludes a finding of vexatious delay.  See 
McGee
, 315 Ill. App. 3d at 685, 734 N.E.2d at 151 (delay on part of the plaintiff does not prohibit a finding of unreasonable and vexatious delay).

Goben
 also illustrates that 
Bruder
 established that the columnar declarations sheet in the defendant’s policy stacked.  In 
Goben
 we emphasized the clear precedent that 
Bruder
 had provided.  In 
Goben
 we held, "[T]he language from the 
Bruder
 decision was central to the court’s rationale for why the insurance policy at issue in 
Bruder
 was not ambiguous."  
Goben
, 303 Ill. App. 3d at 649, 707 N.E.2d at 1266.  We then continued by pointing out that even if the language was 
dictum
, 
Bruder
 would be controlling.  Defendant’s dubious contention that 
Bruder
 was not controlling is erased by 
Goben
.  

Even absent the clear precedent provided on the issue, the conduct by defendant in this case would still be somewhat disturbing.  According to defendant, it made an offer of $66,000 in September 1995.  The record does not document defendant’s contention, and plaintiff contends that no such offer was made.  According to plaintiff, defendant made its first offer on July 17, 1998, nearly five years after the wreck and more than 2½ years after suit was filed, by offering to deposit $50,000 into court.  Plaintiff objected to defendant’s petition to deposit the funds, on the ground that such deposit should not determine the issues remaining in the case.  Defendant contends that it declined to make the $50,000 deposit after the court granted the petition but informed defendant that any such deposit would have no bearing on any issues in the case.  Despite the various descriptions of what was offered, the record remains clear that defendant did not make a deposit.  The failure to deposit even the minimal amount when there is a dispute as to the limits of coverage is conduct that could be seen as vexatious delay.  See 
House
, 286 Ill. App. 3d at 387, 675 N.E.2d at 1044 (vexatious delay occurred when the insurer failed to pay the lesser amount that the insurer admitted was due in the dispute over the limits of coverage).  The delay in payment after clear precedent has been established can only be characterized as vexatious. 

Plaintiff contends that she is due interest on her claim.  Under the Interest Act, "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; *** and on money withheld by an unreasonable and vexatious delay of payment." 815 ILCS 205/2 (West 1998).  Whether to award prejudgment interest is a matter within the sound discretion of the trial court, and the court’s decision will not be reversed absent an abuse of that discretion.  
Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Co.
, 321 Ill. App. 3d 330, 348, 747 N.E.2d 495, 510 (2001).  We need not address whether the court should have awarded prejudgment interest on the ground that the insurance policy is an instrument of writing.  See 
Marcheschi v. Illinois Farmers Insurance Co.
, 298 Ill. App. 3d 306, 314, 698 N.E.2d 683, 689 (1998) (interest was awarded on a claim for uninsured-motorist coverage because the policy was an instrument of writing).  As we find that defendant’s delay in payment was vexatious, we also find that plaintiff is entitled to prejudgment interest.  

Defendant claims that interest should not be awarded as the sum due was not liquidated or subject to easy determination.  See 
Boyd v. United Farm Mutual Reinsurance Co.
, 231 Ill. App. 3d 992, 1001, 596 N.E.2d 1344, 1350 (1992).  As discussed above, defendant’s policy clearly allowed $300,000 in coverage.  The determination of a proper setoff should not preclude an award of prejudgment interest.  Prejudgment interest is proper even when the amount due requires legal ascertainment.  
Bank of Chicago v. Park National Bank
, 266 Ill. App. 3d 890, 900, 640 N.E.2d 1288, 1296 (1994); see 
House
, 286 Ill. App. 3d at 387, 675 N.E.2d at 1044 (an award of prejudgment interest was proper in a dispute over policy limits). 

We are not unmindful of the concern that applying sanctions to a defendant who raises arguments regarding the status of the law, as opposed to denying obvious facts, may chill the adversary process we strive to protect.  In this case, however, defendant’s failure to act despite clear precedent indicates an attitude that the Illinois Insurance Code and the Interest Act were established to deter.  We, therefore, find that plaintiff is entitled to interest under the Interest Act (815 ILCS 205/2 (West 1998)).  As the trial court can best ascertain the appropriateness of any further action, we remand the matter for consideration of additional sanctions. 

B.  Interstacking & Setoff 

Defendant contends that the trial court erred in refusing to apply the "other insurance" clause to prevent the stacking of defendant’s policy with the Western States policy.  Plaintiff contends that the language in the "other insurance" clause does not prevent stacking and does not allow for a setoff.

The policy contained the following "other insurance" clause:

"OTHER INSURANCE

If there is other applicable similar insurance, we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."

The plain language of this clause allows plaintiff to collect "the total of all applicable limits" but limits defendant’s liability to a 
pro rata
 share.  Therefore, the total of all the underinsured-motorist coverage is $350,000:  $300,000 from defendant and $50,000 from Western States.  Defendant is responsible for its proportion, or six-sevenths, of all underinsured-motorist coverage.  

Defendant’s reliance on 
Darwish v. Nationwide Mutual Insurance Co.
, 246 Ill. App. 3d 903, 617 N.E.2d 72 (1993), is misplaced.  In 
Darwish
, the "other insurance" clause in question provided, "Total damages in any such occurrence will be considered not to exceed the highest limits available in any one of all policies applicable."  
Darwish
, 246 Ill. App. 3d at 904, 617 N.E.2d at 73-74.  This is in stark contrast to the language in defendant’s policy, which calls for compensation in the amount of "the total of all applicable limits."

Defendant also cites to 
Obenland v. Economy Fire & Casualty Co.
, 234 Ill. App. 3d 99, 599 N.E.2d 999 (1992), 
aff'd
, 623 N.E.2d 748 (1993) (summary disposition).  Despite the result in 
Obenland
, the language of the opinion is not instructive.  In 
Obenland
, the court did quote the "other insurance" clauses from separate policies and did not stack.  Nonetheless, the court’s discussion of stacking was not based on the "other insurance" clauses.  As pointed out above, the 
Obenland
 court limited the total amount of coverage because there was an unambiguous schedule and declarations sheet.  In regard to "other insurance" clauses, the 
Obenland
 court merely stated that a clause limiting payment to an insurer’s 
pro rata
 share is not against public policy.  
Obenland
, 234 Ill. App. 3d at 114, 599 N.E.2d at 1008; see 
Kaufmann v. Economy Fire & Casualty Co.
, 76 Ill. 2d 11, 17, 389 N.E.2d 1150, 1153 (1979) (the purpose of "other insurance" clauses is to make sure an insurer does not pay a disproportionate amount).  Similarly, the clause in the case at hand calls for the payments to be made proportionately between the providers of underinsured-motorist coverage.  However, the plain language of the clause also calls for the other insurance to accumulate and for the plaintiff to have coverage in the amount of the total of all applicable limits.  See 
Green v. Safeco Life Insurance Co.
, 312 Ill. App. 3d 577, 581, 727 N.E.2d 393, 397 (2000) (the plain language of a contract should be enforced).  This fulfills the reasonable expectations of the policyholder and gives him substantial economic value for the premiums paid.  
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474, 485, 687 N.E.2d 1021, 1027 (1997).  The trial court acted accordingly.

C.  Setoff 

The question then becomes:  What portion of the $50,000 payment from Phelps’s insurer is defendant entitled to claim as a setoff?  Western States was entitled to reduce its payment by one-seventh of the $50,000 paid by Phelps, or $7,142.86.  Western States waived this setoff.  Defendant claims entitlement to a setoff of the entire amount paid by Phelps.  Defendant points out that if it is not awarded a setoff for the full amount paid by Phelps, plaintiff will receive more than the amount to which plaintiff claims she is entitled by the policies.  This, defendant argues, runs counter to the goal of placing the insured in the same position the insured would have been in if the tortfeasor had insurance in substantially the same amount as the underinsured-motorist coverage.  Defendant quotes language in other decisions that indicates there should be a dollar-for-dollar reduction for any payment made by the tortfeasor.  
Sulser v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 556, 591 N.E.2d 427, 430 (1992); 
Cummins
, 178 Ill. 2d at 483, 687 N.E.2d at 1026.  Nonetheless, in those cases there was no waiver of setoff by one of multiple providers of underinsured-motorist coverage.

The issue here is, If an insured possesses multiple underinsured-motorist policies and one insurer pays its policy limits and waives its right to a setoff, who is entitled to the share of the tortfeasor’s payment that the paying insurer would have been able to claim as a setoff?  We believe that a second insurer is not entitled to the setoff that could have been claimed by the paying insurer.  

Western States does not provide a different form of insurance, such as workers' compensation, nor is Western States’ coverage excess over defendant’s primary coverage.  According to the "other insurance" clause of both policies, defendant would be responsible for six-sevenths of any coverage up to the total of all applicable limits of $350,000.  Defendant is bound to the contract.  
Green
, 312 Ill. App. 3d at 581, 727 N.E.2d at 397.  As the tortfeasor’s payment of $50,000 subtracted from the total limits is $300,000, defendant is responsible for six-sevenths of that amount, or $257,142.86.

We see no reason defendant’s right to a setoff should increase because of Western States’ waiver.  Western States obtained no benefit from defendant prolonging the litigation.  Defendant’s obligation should not be reduced by Western States’ waiver.

D.  Distribution

Plaintiff contends that the trial court erred in equally distributing the Janes policy proceeds among all the claimants–one for each of the occupants of the Janes vehicle.  Plaintiff contends that the estates of the Harrises and the Churches had been paid the maximum under their own underinsured-motorist policies.  Plaintiff argues that the trial court’s distribution of funds leaves a gap in the coverage to plaintiff and her husband.

 The purpose of underinsured-motorist coverage is to place the insured in the same position she would be in if the tortfeasor had been insured to the limit of the underinsured-motorist coverage.  See 
Cummins
, 178 Ill. 2d at 483, 687 N.E.2d at 1026.  In 
Cummins
, our supreme court held that a tortfeasor’s vehicle was underinsured for the purposes of underinsured-motorist coverage, even though the plaintiff had settled for less than the liability limits of the tortfeasor’s policy.  The court concluded that underinsured-motorist insurance should be interpreted so that it "fills the gap" between the tortfeasor’s policy and the insured’s policy.  The court found that the amount a tortfeasor is underinsured is determined by comparing the amount of underinsured-motorist coverage to the amount of payment recovered from the tortfeasor.  
Cummins
, 178 Ill. 2d at 485, 687 N.E.2d at 1027.  This, in effect, requires us to hypothesize that the tortfeasor had liability coverage in the amount of the underinsured-motorist coverage and then to fill the gap between this hypothetical figure and the real amount recovered from the tortfeasor with the underinsured-motorist policy.  This is a simple process when there is only one underinsured-motorist policy.  

This case is more difficult as there were several different underinsured-motorist insurance policies.  Plaintiff first contends that the parties should only receive the amount of their individual underinsured-motorist coverages–the Harrises receive all payments from the Harris policy, the Churches receive all payments from the Church policy, and plaintiff receives all payments from the Janes policy.  

Plaintiff correctly argues that the expectations of the policyholders should be considered.  See 
Cummins
, 178 Ill. 2d at 485, 687 N.E.2d at 1027; 
Hoglund v. State Farm Mutual Automobile Insurance Co.
, 148 Ill. 2d 272, 279, 592 N.E.2d 1031 (1992).  Nonetheless, plaintiff’s first recommendation ignores that the coverage is on the occupants of plaintiff’s vehicle and is not limited to plaintiff individually.  In contrast, the proceeds of the underinsured-motorist policies of the Harrises and the Churches were distributed directly to the policyholders.  If plaintiff’s suggestion were adopted as law, a passenger who had no separate underinsured-motorist coverage would be barred from receiving any payment.  This would be contrary to the purpose of underinsured-motorist insurance to best fill the gap for all the occupants of the not-at-fault vehicle.

Plaintiff suggests as an alternative that the distribution of funds effectuate the intent that all the occupants receive equal underinsured-motorist insurance payments.  This second approach is consistent with the rationale of "filling the gap."  In determining the amount of underinsured-motorist-coverage, a court should hypothesize that the tortfeasor had insurance in the amount of the policy of the not-at-fault vehicle owner.  Similarly, in the distribution of underinsured-motorist insurance funds, a court should also hypothesize that the tortfeasor had liability coverage commensurate with 
all
 underinsured-motorist coverages applicable to the accident.  Doing so requires us to look first to the underinsured-motorist policies of the passengers, as there is no question that the distribution under those policies goes directly to the policyholders.  According to plaintiff, the Harrises received $50,000 each under their own policy, and the Churches would receive $100,000 each.  In attempting to fill the gap, the court should first make a determination of the amounts due under these policies.  The court should then fill in the remaining gap with any coverage on the occupants of the vehicle, provided here by the Janes policy.

This process best allows underinsured-motorist coverage to fill the gap.  Any other approach does not account for all the underinsured-motorist coverage that was purchased.  The Harrises and the Churches allegedly purchased policies for a certain amount.  The underinsured-motorist coverage a policyholder purchases should not be reduced simply because he is an occupant of someone else’s vehicle.  See 
Estate of Sinn v. Mid-Century Insurance Co.
, 288 Ill. App. 3d 193, 196, 679 N.E.2d 870, 872 (1997) (a policy excluding underinsured-motorist coverage when the policyholder was in another person’s vehicle that had underinsured-motorist insurance available was held to be in violation of public policy).  In order to give effect to their underinsured-motorist coverage, we should hypothesize that the tortfeasor actually had insurance to cover those individuals in that amount.  This fills the gap according to the policies the occupants purchased. 

The next step is to determine the amount to be distributed from the policy of the vehicle owner.  By dividing the proceeds equally, the court was ruling that the policy was to fill the gap for all the occupants, including plaintiff.  By determining the amount to be paid 
after
 the individual policies of the occupants are accounted for, the gap can be filled.  

This process of determining underinsured-motorist coverage is similar to what we have called for when the liability insurance of a tortfeasor must be shared among several occupants of a not-at-fault vehicle.  In 
Hathaway v. Standard Mutual Insurance Co.
, the tortfeasor had liability coverage in the same amount as the underinsured-motorist insurance of the owner of the not-at-fault vehicle.  
Hathaway v. Standard Mutual Insurance Co.
, 285 Ill. App. 3d 67, 74, 673 N.E.2d 725, 729 (1996).  However, there were several passengers in the not-at-fault vehicle.  As payments from the tortfeasor’s liability coverage were made to the other occupants of the not-at-fault vehicle, the owner of the not-at-fault vehicle did not receive the full allotment of the tortfeasor’s liability coverage.  We ruled that the owner was entitled to underinsured-motorist coverage in order to fill the gap, despite the tortfeasor having liability limits of an equivalent amount.   

In 
Hathaway
, the determination of the appropriate distribution required us to look at the distribution of the tortfeasor’s policy to the passengers before applying the owner’s underinsured-motorist coverage.  Similarly, in this case, we rule that the policies specific to a passenger in a vehicle should be looked at prior to a distribution of an owner’s underinsured-motorist coverage among the occupants.  

As the damages exceed the policy limits for all the occupants, there is no need to refer to the "other insurance" clauses of the other policies for distribution.  The damages incurred in this case exceed the limits of all the policies, so there should be no question as to who has priority or what is the 
pro rata
 share.  Plaintiff states in her brief that the Church policy has an excess-only "other insurance" clause and that the policy limits the Churches’ total recovery to $200,000.  The application of such a clause to place the Church policy as only excess over the Janes policy would widen the gap for plaintiff by distributing from the Janes policy first and diminish the funds available to plaintiff.  This would be void as against the purpose of filling the gap.  See 
Illinois Farmers Insurance Co. v. Cisco
, 178 Ill. 2d 386, 394, 687 N.E.2d 807, 811 (1997) (an "other insurance" clause conditioning the policyholder’s uninsured-motorist coverage on the availability of the other person's uninsured-motorist coverage, as opposed to the insurance of the tortfeasor, is void against public policy); see also R. J. Robertson, "
Other Insurance" Clauses in Illinois
, 20 S. Ill. U.L.J. 403 (1996) (arguing that enforcing "other insurance" clauses is a misapplication of contract law because the insurers did not contract with each other). 

If a court decides that the passengers are equally entitled to recover damages, the "gap" should be filled first by the policies specific to a policyholder and then by policies general to all occupants.  Assuming plaintiff has correctly assessed the limits of the other injured parties’ policies, plaintiff would be entitled to the first $100,000 to become equal to the Harrises, and then the funds of the Janes policy would be equally distributed with the Harrises until all parties are equal to the Churches.  Upon remand, a hearing will be required to allow plaintiff to prove that the Harrises and the Churches had other coverage. 

E.  Common Fund

Plaintiff contends defendant is responsible for attorney fees incurred in the recoupment of payments from Phelp’s insurer under the common fund doctrine.  Defendant contends this issue was waived by plaintiff’s failure to present the issue to the trial court.  Our examination of the record reveals that defendant is correct.  The issue of the common fund doctrine was never presented to the trial court and was, therefore, waived.  In view of plaintiff’s waiver, we allow defendant’s motion to strike those portions of plaintiff’s brief which deal with the common fund doctrine. 

For the foregoing reasons, this court affirms the circuit court’s order allowing stacking and reverses the order of the circuit court of Williamson County in other respects noted above, and we remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

WELCH, J., concurs.

JUSTICE GOLDENHERSH, concurring in part and dissenting in part.

I concur in the resolution of all the issues addressed in the opinion, but I respectfully dissent from the decision to not address the applicability of the common-fund doctrine.  Plaintiff has raised the issue of whether defendant is responsible for attorney fees incurred in the recoupment of payments from Phelps’s insurer under the common-fund doctrine.  Defendant contends this issue was waived, and the majority has declined to address the question.  The rule of waiver is an admonition on the parties, however, and not a limit on the jurisdiction of the appellate court.  As the applicability of the common-fund doctrine is a question of law that is essential to the trial court’s disposition of this case on remand, we should review the issue pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)).  See 
Catholic Charities of the Archdiocese of Chicago v. Thorpe
, 318 Ill. App. 3d 304, 311, 741 N.E.2d 651,655 (2000); 
Daley v. License Appeal Comm’n of the City of Chicago
, 311 Ill. App. 3d 194, 200, 724 N.E.2d 214, 220 (1999).  The responsibility of the appellate court to address such unresolved questions was examined in 
Thorpe
:

"In response to Seller’s contention that Buyer’s argument from 
Grossinger
 was waived by defendant’s failure to raise this issue below, Buyer contends that the issue was raised, albeit obliquely and briefly.  Buyer contends that the issue was sufficiently raised by him in response to a motion to strike affirmative defenses where he argued that 'to be valid a provision for liquidated damages must be for a certain sum,' apparently contending that there is uncertainty insofar as Seller attempted to preserve his right to affirmative damages alternatively to his right to liquidated damages.  He further contends that he cited 
Grossinger
 below, albeit not on this issue.  
We do not, however, feel constrained to examine the sufficiency of Buyer’s contention, since in any event any waiver on his part is only binding on the parties and not binding on this court
.  
Ward v. Community Unit School District No. 220
, 243 Ill. App. 3d 968, 974, 614 N.E.2d 102, 107 (1993) ('the waiver rule is a limitation only on the parties, and this court has the power to decide any issue as long as the record contains facts sufficient for resolution of the issue').  
This issue raises a clear question of law, and the factual record is sufficient to permit its resolution without further input from the trial court below
.  Furthermore, we find that resolution of this issue is necessary to maintain a uniform body of precedent on this point.  
American Federation of State, County & Municipal Employees, Council 31 v. County of Cook
, 145 Ill. 2d 475, 480, 584 N.E.2d 116, 118-19 (1991) ('the responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system')."  (Emphasis added.)  
Thorpe
, 318 Ill. App. 3d at 310-11, 741 N.E.2d at 655-56.

The applicability of the common-fund doctrine, as opposed to the determination of what amount should be awarded, is purely a question of law.  Defendant therefore suffered no prejudice by no further development of the issue on this record.  Establishing precedent on this issue will contribute to establishing a uniform body of precedent and to the trial court’s handling of the case on remand.  As such, we should address the applicability of the common-fund doctrine as a matter of law.

The general rule is that, absent statutory authority or a contractual agreement between the parties, each party is to bear its own attorney fees and costs.  The common-fund doctrine does not mandate a shift of fees to an adversary, but it allows a party that creates a fund from which others benefit to seek reimbursement from those other parties.  
Morris B. Chapman & Associates, Ltd. v. Kitzman
, 193 Ill. 2d 560, 572, 739 N.E.2d 1263, 1271 (2000).  The rationale behind the common-fund doctrine is that if the costs of the litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched.  
Scholtens v. Schneider
, 173 Ill. 2d 375, 385, 671 N.E.2d 657, 663 (1996).

Defendant responds that the common-fund doctrine does not apply because the setoff resulting from Phelps’s payment was not a benefit for purposes of the doctrine.  Defendant contends that this is different from the typical application of the common-fund doctrine.  The common-fund doctrine is often applied in subrogation cases where an insurer obtains a recovery for medical payments through the plaintiff’s attorney’s efforts in creating a fund that paid for medical bills.  In the case at hand, defendant argues that the insurer receives no recovery.  Instead, the amount paid on behalf of Phelps merely dictates the amount of underinsured-motorist coverage under statute.  See 215 ILCS 5/143a-2(4) (West 1998).  

The application of the common-fund doctrine is not limited to insurance subrogation cases.  
Kitzman
, 193 Ill. 2d at 572, 739 N.E.2d at 1272.  The general requirements for applying the common-fund doctrine are (1) the fund for which fees are sought was created as a result of legal services performed by the plaintiff’s attorneys, (2) the claimant of the fund (defendant) did not participate in its creation, and (3) the claimant will benefit from the fund.  
Taylor v. State Universities Retirement System
, 203 Ill. App. 3d 513, 520, 560 N.E.2d 893, 897 (1990).

In 
Young v. Mory
, 294 Ill. App. 3d 839, 690 N.E.2d 1040 (1998), this court held that the common-fund doctrine applied when a party received a setoff.  In 
Young
, the plaintiff had reached a tentative settlement of workers’ compensation claims with his employer for $100,000, of which $20,000 was for attorney fees.  The plaintiff also sought occupational disability benefits from the State Employees’ Retirement System of Illinois (SERS).  Prior to finalizing the settlement, the plaintiff sought a declaratory judgment to enjoin SERS from offsetting his retirement benefits by the attorney fees portion of the pending settlement.  Under the Illinois Pension Code, SERS was entitled to set off any workers’ compensation award.  40 ILCS 5/14-129 (West 1996).  SERS had adopted a regulation which provided that the amount considered for the purpose of a setoff would not be reduced by any legal expenses granted in the workers’ compensation award.  Under this regulation, even though a worker would be required to file a workers’ compensation claim prior to claiming a pension from SERS, SERS could offset the portion of the award that a plaintiff was required to pay his attorney.  We found that SERS clearly benefitted from the services of the plaintiff’s attorney in that SERS would be able to set off the full amount of the workers’ compensation award, including the amount paid for attorney fees.  As such, the common-fund doctrine applied and SERS was responsible for the fees incurred by the plaintiff in seeking the workers’ compensation claim. 

Defendant here, as in 
Young
, benefits from a fund by the process of setoff.  Plaintiff here was required to seek coverage under Phelps’s liability insurance before making a claim for underinsured-motorist coverage.  Similar to how the amount due by SERS was determined, according to statute the amount to be paid by defendant here is determined by the setoff to be claimed from the tortfeasor’s liability insurance.  Like SERS, defendant is attempting to set off the payment received from Phelps regardless of the amount of litigation expenses incurred by plaintiff.  SERS received a benefit through the setoff, and so does defendant in this case.  The criteria for the application of the common-fund doctrine are met: (1) the payment by Phelps was made as a result of the services provided by plaintiff’s attorneys, (2) defendant did not participate in the creation of this fund, and (3) defendant benefits from the fund, by receiving a setoff.

We should instruct the trial court that the common-fund doctrine is applicable and, upon remand, a factual inquiry should be made to determine the amount to be awarded under the doctrine.

For the foregoing reasons, I concur in part and dissent in part with the opinion of the majority.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 08/31/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.