# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Columbia Mutual Insurance Co. v. Herrin*, 2012 IL App (5th) 100037

| | |
|---|---|
| Appellate Court Caption | COLUMBIA MUTUAL INSURANCE COMPANY, Plaintiff, v. ROGER HERRIN, Special Administrator of the Estate of Michael Herrin, Deceased, KATHERINE DUNCAN, ROSS DUNCAN, and JARED HEAD, ENCOMPASS INSURANCE, HARRISBURG MEDICAL CENTER, BRIAN W. BRAMLET, and ROBERT BRAMLET, Defendants (Roger Herrin, Special Administrator of the Estate of Michael Herrin, Deceased, Counterplaintiff-Appellee, and Martha Head, as Mother and Next Friend of Jared Head, a Minor, and Martha Head and Wayne Head, Individually and as Parents of Jared Head, a Minor, Counterplaintiffs-Appellants, v. Columbia Mutual Insurance Company, Monroe Guaranty Insurance Company, and Encompass Insurance Company, Counterdefendants, and Katherine Duncan, Ross Duncan, and Russell Duncan, Counterdefendants-Appellants, and Roger Herrin, Special Administrator of the Estate of Michael Herrin, Deceased, Counterdefendant-Appellee). |
| District & No. | Fifth District<br>Docket No. 5-10-0037 |
| Filed | January 12, 2012 |
| Rehearing denied | April 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In complex litigation arising from an automobile accident that resulted in a fatality and multiple injuries, the trial court erred in applying a ratio method of distributing the underinsured-motorist coverage proceeds without considering the amounts available exclusively to certain occupants before distributing the host vehicle's underinsured-motorist coverage, since *James* requires that the trial court take into account the presence of separate underinsured-motorist coverage exclusive to individual passengers and give each passenger credit with the amount of those benefits available exclusively to them, but the valuations of each occupant's injuries previously set forth in a bench trial would be controlling. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Saline County, No. 02-MR-42; the Hon. Ronald R. Eckiss, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |
| Counsel on Appeal | Douglas N. Dorris, of Howerton, Dorris & Stone, of Marion, for appellants Jared Head, Martha Head, and Wayne Head. |
| | Mark D. Prince, of Prince Law Firm, of Marion, for appellants Katherine Duncan, Ross Duncan, and Russell Duncan. |
| | James B. Bleyer, of Bleyer & Bleyer, of Marion, for appellees Brian W. Bramlet and Robert Bramlet. |
| | John Womick, of Womick Law Firm, Chtrd., of Herrin, for appellee Roger Herrin. |
| Panel | JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion. <br> Justices Welch and Wexstten concurred in the judgment and opinion. |

**OPINION**

¶ 1     The instant appeal involves a dispute about the distribution of underinsured-motorist proceeds following a tragic accident involving a group of teenage boys who were riding together in a Jeep Cherokee being driven by one of the boys' mothers, Katherine Duncan. Defendants-counterplaintiffs, Jared Head, Martha Head and Wayne Head, individually and as parents of Jared Head, a minor (hereinafter Jared), who has since attained the age of majority, and Katherine Duncan, Ross Duncan, and Russell Duncan, appeal the order of the circuit court of Saline County which distributed the underinsured-motorist proceeds. Jared and the Duncans will collectively be referred to as appellants. Appellee is the other defendant, Dr. Roger Herrin, special administrator of the estate of Michael Herrin. Michael Herrin died as a result of the accident, and Dr. Herrin was his father. While appellants and appellee both recognize that the formula set forth in *Janes v. Western States Insurance Co.*, 335 Ill. App. 3d 1109, 783 N.E.2d 37 (2001), controls, appellants argue the trial court incorrectly applied the formula. Appellants contend the misapplication of *Janes* resulted in

appellee receiving a disproportionately large share of the host vehicle's underinsured-motorist coverage, specifically arguing: (1) the ratio method is not the method of distribution *Janes* requires when distributing a common pool of underinsured-motorist coverage available upon a host vehicle; (2) the trial court erred when it used the value of the amounts actually received by appellee from separate underinsured-motorist coverage available exclusively to it instead of the total limits of underinsured-motorist coverage which were available exclusively to it; and (3) the trial court erred when it used as the valuations for each occupant's injuries the amounts set during a prior bench trial which distributed the bodily injury liability proceeds of $100,000 from the driver of the at-fault vehicle's insurance policy instead of requiring that the valuation of injury awards for use in distributing underinsured-motorist proceeds be set by arbitration. We affirm in part, reverse in part, and remand for further proceedings.

¶ 2                                                  BACKGROUND

¶ 3        On June 14, 2001, Michael Herrin, Jared Head, and Ross Duncan were passengers in a Jeep Cherokee being driven by Katherine Duncan when they were hit by a truck being driven by Brian Bramlet, who failed to stop at an intersection. Michael Herrin was killed in the accident while Katherine Duncan, Ross Duncan, and Jared Head all received injuries. All occupants of the Jeep Cherokee filed separate personal injury claims against Brian Bramlet, the at-fault driver. Bramlet's truck was insured by Columbia Mutual Insurance Company (Columbia Mutual) with policy limits of $100,000 per occurrence. Columbia Mutual tendered its $100,000 policy limits.

¶ 4        An issue arose as to how to divide the $100,000 in liability insurance proceeds provided by the Columbia Mutual policy. Accordingly, the trial court conducted a consolidated bench trial in December 2007 in order to establish values for each of the claims. After hearing all the evidence, the trial court found the following values for the claims of the occupants of Katherine Duncan's vehicle:

| | |
|---|---|
| Estate of Michael Herrin | $10,010,953.61 |
| Jared Head | $    633,804.70 |
| Katherine Duncan | $    155,855.11 |
| Ross Duncan | $    125,892.50 |
| Russell Duncan | $      40,000.00 |
| Total | $10,966,505.92 |

¶ 5        Dr. Herrin owned several nursing homes and purchased business insurance on the nursing homes and insurance on certain vehicles owned through the nursing homes. Two policies specifically provided automobile insurance coverage on certain listed vehicles and provided underinsured-motorist coverage not only on Dr. Herrin but also on relatives who resided with him, including Michael. The policies were issued by Monroe Guaranty and Cincinnati Insurance. After litigation, it was determined that Dr. Herrin's nursing home policies provided his family with $5 million of underinsured-motorist coverage and specifically covered the accident in which Michael was killed on June 14, 2001. Dr. Herrin was also

-3-

covered by an automobile policy through Encompass Insurance Company (Encompass), which provided an additional $500,000 in underinsured-motorist coverage for appellee's wrongful-death claim for a total of $5.5 million in underinsured-motorist coverage. This $5.5 million is exclusive to appellee's claims, and appellants can make no claim against the $5.5 million pool of appellee's underinsured-motorist coverage.

¶ 6    After mediation, the Herrin estate settled its wrongful-death claim for $1.65 million out of the $5.5 million in underinsured-motorist coverage available exclusively to the Herrin estate. A total of $1.25 million was paid by Monroe Guaranty and $400,000 was paid by Cincinnati Insurance. The trial court approved the $1.65 million settlement.

¶ 7    At the time of the accident, Jared's family carried underinsured-motorist coverage on their vehicles totaling $100,000; however, because the driver of the at-fault vehicle, Brian Bramlet, was carrying $100,000 in personal liability insurance through Columbia Mutual, Bramlet was not an underinsured motorist for purposes of Jared's family's automobile insurance carrier. The Duncan family carried automobile insurance through Encompass on numerous vehicles. After extended stacking litigation, including an appeal to this court, it was determined that the Duncans' underinsured-motorist coverage aggregated to $900,000. Encompass was given a setoff for the $100,000 in tortfeasor liability insurance on the basis that those funds will be distributed to the parties injured by the tortfeasor Bramlet, leaving a total of $800,000 available from the underinsured-motorist coverage provided by Encompass. See *Columbia Mutual Insurance v. Herrin*, No. 5-04-0575 (2007) (unpublished order under Supreme Court Rule 23 (eff. July 1, 1994)).

¶ 8    On April 21, 2009, Encompass filed a motion for leave to deposit $800,000 of underinsured-motorist benefits with the court with a request that Encompass be discharged from liability upon deposit of those funds and a request that the occupants of the Duncan vehicle be ordered to settle between themselves their rights or claims to the underinsured benefits available under the Encompass policy. While not objecting to $800,000 being paid into the court, appellants objected to Encompass's motion on the basis that the amounts to be distributed to the occupants of the Duncan vehicle were issues that needed to be arbitrated and they should not be "ordered to settle" their rights and claims to the common pool of host vehicle underinsured-motorist coverage when a good-faith disagreement existed on that issue.

¶ 9    On December 1, 2009, the trial court conducted a hearing on Encompass's motion and appellants' objections thereto. The trial court found that the arbitration clause of the Encompass policy would not be followed because the court previously set the amounts of each claim in a bench trial which determined the value of the claims when considering how the $100,000 in liability insurance coverage carried by the tortfeasor should be distributed. The trial court noted that the Herrin estate already received $1.65 million in underinsured-motorist settlement proceeds from policies which were only available to the Herrin estate and that it would apply the principles of *Janes* when distributing the Encompass underinsured-motorist funds. The trial court used a ratio method and, ultimately, distributed the Encompass funds as follows:

| Herrin Estate | $677,851.06 |
| Jared Head | $147,368.96 |
| Katherine Duncan | $ 36,228.77 |
| Ross Duncan | $ 29,286.12 |
| Russell Duncan | $ 9,265.09 |
| Total | $900,000.00 |

Jared Head and the Duncans filed separate motions to reconsider or modify. The trial court denied the motions. Appellants filed timely notices of appeal.

¶ 10                                ANALYSIS

¶ 11    We first address appellee's argument that this case is moot because the $800,000 of Encompass funds have already been distributed. According to appellee, the trial court has already paid out Encompass's underinsured-motorist funds to the administrator of the Herrin estate, who has already paid them out from the probate estate, and, thus, no funds remain in the estate of Michael Herrin. We point out that an issue is only moot if no actual controversy exists or where events occur which make it impossible for the court to grant effectual relief. *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 484-85, 459 N.E.2d 1364, 1366 (1984). Here, we agree with appellants that the early distribution of any of the Encompass insurance proceeds, which was done over the objection of Jared Head, does not make the issues in this appeal moot. There is nothing in the record to indicate that the funds distributed to the estate of Michael Herrin through the administrator of the estate, Dr. Roger Herrin, Michael's father, have been spent. In any event, even if the funds have been spent, Dr. Herrin can be required to make restitution. See *First National Bank of Jonesboro v. Road District No. 8*, 389 Ill. 156, 162-63, 58 N.E.2d 884, 887 (1945). We turn now to the issues raised by appellants.

¶ 12                        I. METHOD OF DISTRIBUTION

¶ 13    Appellants first contend the trial court erred by employing the ratio method of distribution. Appellants insist that *Janes* requires the host vehicle occupants with separate sources of underinsured-motorist coverage exclusive to them access their own sources of underinsured-motorist coverage before participating in the host vehicle's common pool of underinsured-motorist coverage and that the common pool coverage should be used initially to satisfy the claims of occupants with no outside source of underinsured-motorist coverage. We agree.

¶ 14    In *Janes*, the plaintiff, Linda Janes, and her husband were involved in a car accident in their van. Her husband was driving and was killed. Linda survived but incurred medical bills in the amount of $162,226. Four other van passengers, two married couples, Cleo and Jerry Harris and Connie and Charles Church, were also killed. Alice Phelps was driving a car that crossed the centerline and caused the collision. Phelps had $50,000 in bodily injury liability coverage that was tendered by her insurance company.

¶ 15    The plaintiff and her husband had two separate auto insurance policies. One issued by

Western States Insurance Company (Western States) provided $50,000 in underinsured-motorist coverage, and the other issued by Transamerica Indemnity Company (Transamerica) stacked to provide $300,000 in underinsured-motorist coverage for a total of $350,000. That amount was reduced to $300,000 because of the $50,000 in tortfeasor liability coverage already paid into the court. Cleo and Jerry Harris received $50,000 each from their own insurance policy for a total of $100,000 in underinsured-motorist benefits exclusive to them. Connie and Charles Church each received $100,000 from their own insurance policy for a total of $200,000 in underinsured-motorist benefits exclusive to them.

¶ 16        One of the issues in *Janes* was how to divide the $300,000 in underinsured-motorist benefits provided by the Janes's two insurance policies among the six passengers of the van. The trial court ruled that the $300,000 should be divided equally among the six occupants of the Janes's van. The trial court awarded each of the six claimants $8,333.33 from the Western States policy and $41,666.66 from the Transamerica policy. *Janes*, 335 Ill. App. 3d at 1114, 783 N.E.2d at 40-41. Plaintiff appealed the trial court's distribution of the host vehicle underinsured-motorist coverage in equal amounts. The *Janes* court found that the trial court's distribution of the host vehicle's underinsured-motorist benefits to the occupants of the insured vehicle in equal shares failed to fill the gap between the tortfeasor's policy and the insured's policy because the trial court failed to consider payments of underinsured benefits to the occupants individually and failed to adjust payments of underinsured-motorist benefits payable on the van to equalize the funds received by each occupant. *Janes* specifically stated:

> "If a court decides that the passengers are equally entitled to recover damages, the 'gap' should be filled first by the policies specific to a policyholder and then by policies general to all occupants. Assuming plaintiff has correctly assessed the limits of the other injured parties' policies, plaintiff would be entitled to the first $100,000 to become equal to the Harrises, and then the funds of the Janes policy would be equally distributed with the Harrises until all parties are equal to the Churches. Upon remand, a hearing will be required to allow plaintiff to prove that the Harrises and the Churches had other coverage." *Janes*, 335 Ill. App. 3d at 1123-24, 783 N.E.2d at 48.

The result of the *Janes* decision was that all occupants of the vehicle would ultimately receive $100,000 in underinsured-motorist coverage.

¶ 17        The *Janes* court rejected the ratio method employed by the trial court because it did not take into account the separate sources of underinsured-motorist coverage the Churches and the Harrises had available exclusively to them before dividing the common pool of underinsured-motorist coverage. Pursuant to the holding in *Janes*, the Churches were not entitled to any additional underinsured-motorist funds available through the host vehicle's common pool of underinsured-motorist proceeds because the Churches' own underinsured-motorist coverage available exclusively to them already provided them with $100,000 each. The Harrises were entitled to another $50,000 each from the host vehicle policy, which combined with their own underinsured-motorist coverage of $50,000 each resulted in a total of $100,000 each. Plaintiff and her deceased husband would take $100,000 for a total of $200,000.

¶ 18     Here, as in *Janes*, the trial court erred in applying a ratio method without considering the amounts of underinsured-motorist coverage which the occupants of the Duncan vehicle had available exclusively to them before dividing up the host vehicle's underinsured-motorist coverage provided by the Encompass policy. *Janes* requires a court to take into account the presence of separate underinsured-motorist coverage exclusive to individual passengers and give each passenger credit with the amount of underinsured-motorist benefits available exclusively to them. Therefore, we reverse that portion of the trial court's order which apportioned the Encompass policy between the occupants of the host vehicle and remand with directions that when determining the apportionment of an $800,000 pool of host vehicle underinsured-motorist coverage available through Encompass, the trial court give credit for the underinsured-motorist coverage available exclusively to the estate of Michael Herrin.

¶ 19                    II. SETTLEMENT VS. COVERAGE AVAILABLE

¶ 20     Appellants next contend that the trial court erred by crediting only the amount of the settlement received ($1.65 million) rather than the amount of the coverage available to the estate of Michael Herrin ($5.5 million). After careful consideration, we find that this issue need not be decided because using either figure, it is clear that the value of the claims of the occupants in the Duncan host vehicle who did not have outside sources of underinsured-motorist insurance exceeds the $800,000 available under the Encompass policy.

¶ 21     In the instant case, a bench trial was conducted to determine the value of the claims of the occupants of the Duncan vehicle when considering how the $100,000 in liability coverage carried by the tortfeasor should be distributed. All parties participated in the bench trial, and no party appealed the trial court's findings. The trial court specifically valued appellants' claims as follows:

| | |
|---|---|
| Katherine Duncan | $155,855.11 |
| Ross Duncan | $125,892.50 |
| Russell Duncan | $ 40,000.00 |
| Jared Head | $633,804.70 |
| Total | $955,552.31 |

Thus, the sum of appellants' claims exceeds the amount of underinsured-motorist coverage available under the Duncans' Encompass policy. Because the Herrin estate has already received $1.65 million in underinsured-motorist benefits available exclusively to the estate, which far exceeds the $800,000 of underinsured-motorist coverage available on the host vehicle, it is clear that under either computation ($1.65 million or $5.5 million), the Herrin estate will not be able to recover any additional funds.

¶ 22                              III. ARBITRATION

¶ 23     Finally, appellants contend the trial court erred when it used as valuations for each occupant's injuries the amounts set during the prior bench trial which distributed the bodily injury liability proceeds of $100,000 from the at-fault driver's insurance policy instead of requiring the valuation of the injury awards for use in distributing underinsured-motorist

proceeds under the Duncans' Encompass policy be set by arbitration as per the language of the Encompass policy. We disagree.

¶ 24    The instant case presents a tragedy where neither the appellants nor the appellee can really ever be declared a winner. The best we can hope for is that sooner rather than later this complex litigation will come to a logical conclusion, and the appellants and the appellee will receive equitable compensation for their grave losses. While appellants contend that they are entitled to arbitration on the issue of damage awards, we find that the damage awards decided by the trial court during the bench trial to determine the distribution of the tortfeasor's bodily injury liability should control.

¶ 25    It is well settled that the fixing of damages is a function of the trier of fact and should not be disturbed upon review unless there is no evidence to support the finding or the award does not bear a reasonable relation to plaintiffs' loss. *Netzel v. United Parcel Service, Inc.*, 181 Ill. App. 3d 808, 817, 537 N.E.2d 1348, 1354 (1989). Here, appellants did not object to these damage awards at the time they were decided by the trial court, nor did they file an appeal on that issue. Appellants had an opportunity to present their evidence and cross-examine witnesses.

¶ 26    Appellants argue that because they believed that the evidence during the bench trial was only being used to set the damage awards affecting the distribution of the $100,000 from the tortfeasor's policy, no party had much desire to strike an adversarial position. However, during this appeal, appellants have failed to show us how the valuations are flawed or unreasonable. Even though the parties were not initially aware that these valuations would be used, considering the totality of the circumstances, we find the trial court's decision to use the valuations for each occupant's injuries previously set during the bench trial distributing the bodily injury liability proceeds from the at-fault driver's policy not to be an abuse of its discretion.

¶ 27                                              CONCLUSION

¶ 28    For the foregoing reasons, the judgment of the circuit court of Saline County is hereby affirmed in part and reversed in part, and the cause is remanded with directions consistent with this opinion to distribute to each of the injured occupants of the host vehicle from the $800,000 of common pool Encompass underinsured-motorist coverage by properly applying the formula for distribution mandated in *Janes*. The valuations for each occupant's injuries previously set forth in the bench trial are controlling and arbitration is unnecessary.

¶ 29    Affirmed in part and reversed in part; cause remanded with directions.